STATE OF NORTH CAROLINA v. DOCK McKOY, JR., A/K/A DOCK McCOY, A/K/A DOCK McKAY, A/K/A PAUL McCOY

No. 585A85

(Filed 26 July 1990)

1. **Criminal Law §§ 1325, 1352 (NCI4th)— McKoy decision— unanimity on mitigating circumstances invalidated—capital sentencing statute still in effect**

   The decision of *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990), did not invalidate the North Carolina capital sentencing statute, N.C.G.S. § 15A-2000, but invalidated only our jury instructions requiring unanimity on mitigating circumstances in a capital sentencing proceeding. Because the invalidated instructions amount only to trial error and do not arise from any deficiency inherent in the statute itself, the statute remains constitutional and in full force and effect.

   **Am Jur 2d, Criminal Law §§ 609, 628.**

2. **Criminal Law § 1369 (NCI4th)— McKoy error—death sentence invalidated—life sentence not automatic**

   A defendant whose death sentence was vacated by the U.S. Supreme Court because of unconstitutional instructions requiring unanimity on mitigating circumstances was not entitled to be resentenced to life imprisonment as a matter of law under prior North Carolina cases. Nor was imposition of a life sentence required under N.C.G.S. § 15A-2000(d)(2) on the ground that the death penalty was imposed under the influence of an "arbitrary factor" since the unanimity instructions were unconstitutional because of their *potential* for producing an arbitrary result, and there was no showing that the potential for arbitrariness, that is, one or more holdout jurors, was actually realized or that the death sentence resulted from this kind of arbitrariness.

   **Am Jur 2d, Criminal Law §§ 609, 628.**

STATE v. McKOY

[327 N.C. 31 (1990)]

3. **Criminal Law §§ 1325, 1352 (NCI4th) — McKoy error — harmless error analysis**

A *McKoy* error in a capital sentencing proceeding is subject to harmless error analysis. Since the error is one of federal constitutional dimension, the State has the burden to demonstrate its harmlessness beyond a reasonable doubt. N.C.G.S. § 15A-1443(b).

**Am Jur 2d, Appeal and Error § 779.**

4. **Criminal Law §§ 1325, 1352 (NCI4th) — death penalty — McKoy error — State's failure to show harmlessness — new sentencing hearing**

The State failed to demonstrate that a *McKoy* error in a capital sentencing proceeding was harmless beyond a reasonable doubt where the jury, in recommending a sentence of death, failed to find unanimously several proposed mitigating circumstances supported by substantial evidence, and it does not appear beyond a reasonable doubt that there would not have been a different result in the sentence had each juror been allowed to consider such of these circumstances as each found to exist, and the evidence supporting them, in the final weighing process. Therefore, defendant is entitled to a new sentencing hearing at which the question of his punishment will be determined anew.

**Am Jur 2d, Appeal and Error § 779.**

Justice FRYE concurring.

Justice MARTIN concurring.

ON remand from the Supreme Court of the United States for proceedings not inconsistent with its judgment vacating defendant's sentence of death in *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990). Heard in the Supreme Court 14 May 1990.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, William N. Farrell, Jr., Steven F. Bryant, Special Deputy Attorneys General, and Barry S. McNeill, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, and Louis D. Bilionis for defendant-appellant.*

EXUM, Chief Justice.

In *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (hereinafter "*McKoy*"), the United States Supreme Court declared unconstitutional under the eighth and fourteenth amendments of the federal Constitution North Carolina jury instructions directing that, in making the final determination of whether death or life imprisonment is imposed, no juror may consider any circumstance in mitigation of the offense unless the jury unanimously concludes that the circumstance has been proved. Reversing this Court's 5-2 decision to the contrary in *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988) (Exum, C.J., and Frye, J., dissenting), the United States Supreme Court remanded this case to us "for further proceedings not inconsistent" with its opinion. *Id.* at ---, 108 L. Ed. 2d at 381.

On remand defendant contends that as a result of *McKoy*, our capital sentencing statute, N.C.G.S. § 15A-2000, is no longer enforceable, and that neither he nor anyone else can be sentenced to death under it. He argues that this case and all others which have been tried under this statute must be remanded to our trial courts for the imposition of life imprisonment. Defendant says no one in North Carolina can be sentenced to death unless and until the legislature enacts a new capital sentencing statute which does not violate the principles of *McKoy*.

The State contends that *McKoy* does not invalidate our capital sentencing statute. The State says it merely declares unconstitutional a particular jury instruction devised by our trial judges and approved by this Court in *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), *overruled in part on other grounds, State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). The State argues the case is one only of trial error, entitling defendant, at most, to a new sentencing hearing.

We agree with the State's position that the erroneous instructions were trial error. We conclude that defendant is not entitled to be resentenced to life imprisonment as a matter of law, that the *McKoy* error is not harmless and that defendant is entitled to a new sentencing hearing at which the question of his punishment will be determined anew in a manner not inconsistent with this opinion or *McKoy*.

## I.

Defendant was convicted of first degree murder at the 29 July 1985 Criminal Session of Superior Court, Stanly County. The jury recommended a sentence of death and the trial court entered judgment accordingly. Because *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988) (hereinafter *"McKoy I"*), adequately summarizes the evidence, we limit our discussion here to the basic facts and to evidence material to resentencing issues.

The State's evidence tends to show that on 22 December 1984, Lieutenant Robert Usery and Deputy Kress Horne of the Anson County Sheriff's Department had been dispatched to defendant's home because neighbors had complained about defendant's firing a gun. While defendant was in the house, the officers called to him to come out. Defendant refused and threatened to kill them. After other law enforcement officers arrived, defendant continued to speak to Deputy Horne from inside. Deputy Horne was standing behind the patrol car with his pistol drawn. Defendant fired a single shot, killing Deputy Horne.

Defendant's evidence tended to show that he was mentally and emotionally impaired and to support a defense of legal insanity. Defendant, who was wounded in the affray, was treated by a physician who testified at trial that defendant was intoxicated and had a blood alcohol content equivalent to .26 on the breathalyzer scale. Expert psychiatric testimony tended to show that defendant suffered from several mental disorders. Some were related to alcohol abuse and others to his borderline intellectual functioning. Defendant's IQ was 74. Dr. Robert Rollins, Clinical Director of the State's forensic psychiatry unit, testified that defendant had a personality disorder "characterized by denial, paranoid thinking, concrete thinking, impaired abstract thinking, impaired judgment, impaired insight, impaired perception, overreacting to things, poor interpersonal skills, defensiveness, ineffectiveness in functioning and antisocial behavior." Dr. Rollins gave his opinion that, "as a result of mental disorder McKoy was neither able to appreciate the quality of his actions or to distinguish between right and wrong" at the time of the offense. The sixty-five-year-old defendant's own testimony included a rambling and bizarre account of the occurrences on the day of the killing.

At the conclusion of the guilt phase, the jury convicted defendant of first degree murder.

During the penalty phase, the State presented evidence that defendant had pled guilty to second degree murder in 1952. Defendant subsequently recalled Dr. Rollins, who testified that defendant was under the influence of a mental or emotional disturbance at the time he shot Deputy Horne. Defendant also called a psychiatrist, Dr. Patricio Lara of Dorothea Dix Hospital. Dr. Lara diagnosed defendant as having an adjustment disorder, mixed disturbances of emotions and conduct, and as suffering from paranoid and narcissistic features. Dr. Lara was satisfied that defendant was suffering from significant psychological disorders which had existed for a number of years and were exacerbated when defendant was impaired by alcohol.

Following the penalty phase evidence, the trial court instructed the jury regarding its sentencing function. The verdict sheet contained a listing of the aggravating and mitigating circumstances submitted to the jury. This sheet and the trial judge's instructions required the jury to find each mitigating circumstance unanimously before it could consider that circumstance favorably to defendant. Both the instructions and the verdict sheet required the jury, after it had made its findings as to aggravating and mitigating circumstances, to then determine whether the mitigating circumstance(s) were insufficient to outweigh the aggravating circumstance(s), and, if so, whether the aggravating circumstance(s) were sufficiently substantial to justify the death penalty when considered with the mitigating circumstance(s). In making these final determinations, both the instructions and the verdict sheet advised the jury that it could consider only those aggravating and mitigating circumstance(s) which it unanimously found to exist. Both the instructions and the verdict sheet thus precluded any juror from considering any mitigating circumstance favorably to defendant in the final balancing processes unless all jurors had agreed that the circumstance existed. Thus, the instructions and the verdict sheet, in effect, also precluded any juror from considering any *evidence* tending to support a given mitigating circumstance in the final balancing processes unless all jurors agreed that the circumstance existed.

The jury found two aggravating circumstances unanimously and beyond a reasonable doubt: (1) Dock McKoy had been previously convicted of a felony involving violence to the person; and (2) the murder was committed against a deputy sheriff while engaged in the performance of his official duties.

The jury found unanimously and answered "yes" to the following mitigating circumstances:

[1]. The capacity of Dock McCoy to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

[2]. That Dock McCoy has borderline intellectual functioning with a I.Q. test score of 74.

The jury failed to find unanimously and answered "no" to the following mitigating circumstances submitted to it:

[1]. This murder was committed while Dock McCoy was under the influence of mental or emotional disturbance.

[2]. The age of Dock McCoy at the time of this murder is a mitigating circumstance.

[3]. That for several decades Dock McCoy has exhibited signs of mental or emotional disturbance or defect that went untreated.

[4]. That Dock McCoy's mental or emotional disturbance is aggravated by his poor physical health.

[5]. Dock McCoy's ability to remember the events of December the 22nd, 1984, is actually impaired.

[6]. Any other circumstance or circumstances arising from the evidence which you the jury deem to have mitigating value.

The jury then found beyond a reasonable doubt that the mitigating circumstances were insufficient to outweigh the aggravating circumstances, that the aggravating circumstances were sufficiently substantial to call for imposition of the death penalty when considered with the mitigating circumstances that it found and that defendant should suffer the death penalty rather than life imprisonment.

The trial court entered judgment accordingly.

The following procedures then occurred: Defendant appealed to this Court, which heard oral arguments on 14 March 1988. On 6 June 1988, the United States Supreme Court decided *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988). *Mills* held that in capital cases unanimity instructions on mitigating circumstances, under a Maryland capital sentencing procedure similar but not

identical to ours, were unconstitutional under the eighth and fourteenth amendments. We ordered further briefing and arguments in this case to address whether *Mills* made unconstitutional the trial court's instructions to the jury on mitigating circumstances. After reargument on 22 August 1988 this Court distinguished *Mills* and concluded that the trial court's instructions here did not run afoul of *Mills'* holding. *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12. The United States Supreme Court ultimately reversed this decision, concluding that "North Carolina's unanimity requirement violates the Constitution by preventing the sentencer from considering all mitigating evidence." *McKoy*, 494 U.S. at ---, 108 L. Ed. 2d at 376. The United States Supreme Court vacated the death sentence and remanded the case to us for further proceedings not inconsistent with its opinion.

Defendant then filed a "Motion to Remand for the Imposition of Life Sentences or Motion to Permit Supplemental Briefing." We ordered the parties to file supplemental briefs "limited to the issues presented by the opinion of the Supreme Court of the United States remanding the case to this Court, and the issue of whether this Court can engage in a harmless error analysis on the issues presented and, if so, whether the error in this case, if any, was harmless." *State v. McKoy*, 326 N.C. 592, 592, 391 S.E.2d 815, 816 (1990). After the briefs were filed the Court heard oral arguments on 14 May 1990.

II.

[1] We are confident that *McKoy* did not invalidate North Carolina's capital sentencing statute or any part thereof. At most the decision invalidated only our jury instructions requiring unanimity on mitigating circumstances in a capital sentencing proceeding. Because the invalidated jury instructions amount only to trial error and do not arise from any deficiency inherent in the statute itself, the statute remains constitutional and in full force and effect. Defendant may be resentenced under it.

In *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), our first case addressing the permissibility of the unanimity jury instruction on mitigating circumstances, both the parties and the Court treated the question as one of trial error, if error at all, entitling the defendant at most to a new sentencing hearing. *See* Defendant Kirkley's Brief, at 111-18; State's Brief, at 29-32. We stated:

**STATE v. McKOY**

[327 N.C. 31 (1990)]

First, we note that both the Constitution of North Carolina, Article I, Secs. 24 and 25, and [N.C.G.S.] § 15A-2000, the statute covering the sentencing process in capital cases, requires all verdicts of the jury to be unanimous. This Court has also held that a verdict of death in a capital case must be by unanimous vote of the twelve jurors. . . . We now hold that the jury must unanimously find that an aggravating circumstance exists before that circumstance may be considered by the jury in determining its sentence recommendation.

Although it is a settled principle that all verdicts, including those within a sentencing procedure, must be unanimous, *there has never been a determination by this Court or our legislature on the issue of whether a jury must be unanimous in finding that a mitigating circumstance exists. Certainly consistency and fairness dictate that a jury unanimously find that a mitigating circumstance exists before it may be considered for the purpose of sentencing.* This is what the trial judge instructed the jury and in that part of his instruction we find no error.

308 N.C. at 218, 302 S.E.2d at 156-57 (emphasis added, citations omitted).

Although *Kirkley* discussed State statutory and constitutional requirements that verdicts must be unanimous, including verdicts under N.C.G.S. § 15A-2000 in capital cases, *Kirkley* did not hold that unanimity in finding mitigating circumstances is necessarily mandated either by N.C.G.S. § 15A-2000 or our constitution. Rather, as the highlighted portion of the passage shows, *Kirkley* upheld the unanimity jury instruction as a matter of appropriate trial procedure in the interest of "consistency and fairness." Indeed, *Kirkley* recognized that neither this Court nor the legislature had ever addressed this question. *Kirkley* regarded the unanimity requirement as a judicially imposed rule governing trial procedure and not a necessary product of the capital sentencing statute.[1]

Again in *McKoy I*, the Court treated the unanimity instruction as one of trial error, if error at all. Finding no error in the instruction, a majority of our Court in *McKoy I* stated: "Defendant next

---

1. Dissenting in *Kirkley* on the unanimity instruction point, Exum, J. (now C.J.), concluded that the instruction was "error warranting a new sentencing hearing." *Kirkley*, 308 N.C. at 229, 302 S.E.2d at 163.

STATE v. McKOY

[327 N.C. 31 (1990)]

contends that the trial court's sentencing instructions were erroneous and unconstitutional because they required jury unanimity on the existence of a mitigating circumstance before that circumstance could be considered for the purpose of sentencing. We find no error." *McKoy I*, 323 N.C. at 30, 372 S.E.2d at 27.

Whether our decision in *Kirkley*, followed in *McKoy I*, approving the unanimity instructions is best viewed as a judicial interpretation of N.C.G.S. § 15A-2000 or a judicial application of the statute to a particular trial procedure, the statute remains on its face valid. So long as the statute remains facially valid it provides authority for imposing the death sentence on defendant. Only the Court's interpretation or application of the statute permitting the unanimity jury instructions must fall under *McKoy*. Only these instructions may no longer be given. The statute itself remains in effect.

Defendant contends the United States Supreme Court in *McKoy* treated the unanimity instruction as one arising from our "capital sentencing scheme." Therefore, defendant argues, *McKoy* in effect invalidates the entire scheme, including the statute. We do not equate, and we do not believe the Supreme Court intended to equate, the term "capital sentencing scheme" with our capital sentencing statute. Indeed, we find no reference in *McKoy* to the facial validity of our statute. The entire discussion centers on the challenged jury instructions, which became part of our capital sentencing scheme under this Court's decision in *Kirkley*. Moreover, whether these instructions are mandated by the statute itself or arise from some other legal source is a matter of state, not federal, law.

III.

[2] Defendant next argues that several precedents of this Court require remanding his case for the imposition of life imprisonment. He relies primarily on *State v. Hill*, 279 N.C. 371, 183 S.E.2d 97 (1971); *State v. Waddell*, 282 N.C. 431, 194 S.E.2d 19 (1973); *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976); and *State v. Davis*, 290 N.C. 511, 227 S.E.2d 97 (1976). We disagree for reasons which follow.

A brief review of the recent history of capital punishment in North Carolina is necessary for a proper understanding of these cases. Until 1969 North Carolina's death penalty statutes required

that unless the jury in its unlimited and unbridled discretion recommended life imprisonment the death penalty would be imposed for convictions of first degree murder, rape, first degree burglary and arson. N.C.G.S. §§ 14-17, -21, -52, -58 (1969). Under N.C.G.S. § 15-162.1 a defendant who pled guilty to a capital crime was sentenced to life imprisonment.

As several decisions of the United States Supreme Court effectually or actually invalidated various provisions of these statutes, our legislature and this Court responded accordingly.

*United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138 (1968), and *Pope v. United States*, 392 U.S. 651, 20 L. Ed. 2d 1317 (1968), invalidated death penalty statutes with provisions like N.C.G.S. § 15-162.1; and the North Carolina legislature repealed N.C.G.S. § 15-162.1 effective 25 March 1969.

*Furman v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346 (1972), struck down as unconstitutional capital punishment statutes under which judges or juries could decide in their unbridled discretion whether to impose the death penalty. In the wake of *Furman* this Court concluded that the provisions of our death penalty statutes which permitted juries in their discretion to recommend life imprisonment were severable from the remaining portions of the statutes and that *Furman*, in effect, invalidated only these provisions, leaving the death sentences authorized by the statutes intact. *State v. Waddell*, 282 N.C. 431, 194 S.E.2d 19. Under *Waddell* the death penalty in North Carolina became mandatory upon conviction of a capital crime. *Waddell* was expressly made to apply only prospectively so that under it death sentences could be imposed only for capital offenses committed after the date of its decision, 18 January 1973.

Following *Waddell*, the North Carolina General Assembly rewrote all our capital sentencing statutes to make the death sentence mandatory for first degree murder and first degree rape and to make life imprisonment mandatory for arson and first degree burglary. 1973 N.C. Sess. Laws ch. 1201. The new mandatory death penalty statutes became effective for all first degree murders and first degree rapes committed on or after 8 April 1974. *Id. Woodson v. North Carolina*, 428 U.S. 280, 49 L. Ed. 2d 944 (1976), invalidated North Carolina's mandatory death penalty statutes. Following *Woodson*, the North Carolina General Assembly enacted our present

death penalty statute, N.C.G.S. § 15A-2000, which became effective and applied to all murders committed on or after 1 June 1977.

Having reviewed the history of North Carolina's more recent death penalty statutes, we now examine the particular cases upon which defendant relies.

The defendant in *Hill* was convicted of first degree murder committed on 7 October 1968 and sentenced to death under N.C.G.S. § 14-17. This Court found no error in the trial and judgment. *State v. Hill*, 276 N.C. 1, 170 S.E.2d 885 (1969). The United States Supreme Court "reversed" the judgment of death, citing *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, and *Pope v. United States*, 392 U.S. 651, 20 L. Ed. 2d 1317, and remanded to this Court for further proceedings. *Hill v. North Carolina*, 403 U.S. 948, 29 L. Ed. 2d 860 (1971). Pursuant to the Supreme Court's mandate reversing the death sentence, this Court remanded to the superior court for imposition of life imprisonment. *State v. Hill*, 279 N.C. 371, 183 S.E.2d 97.

The defendant in *Waddell* was convicted of rape, then a capital offense, and sentenced to death under N.C.G.S. § 14-21, a statute invalidated by *Furman* and revived temporarily by *Waddell*. The Court remanded for the imposition of life imprisonment, recognizing that to apply its revival of the statute retroactively to defendant would violate the prohibition against *ex post facto* laws contained in article I, section 10 of the federal Constitution. *State v. Waddell*, 282 N.C. 431, 194 S.E.2d 19.

In *Covington* defendants were convicted of first degree murder and sentenced to death under our then mandatory death sentence statute, Chapter 1201 of the 1973 Session Laws. By the time this Court decided their appeal, the statute had been declared unconstitutional in *Woodson*. Noting the legislative provision prescribing life imprisonment in the event this Court or the United States Supreme Court determined the death sentence could not be constitutionally imposed under the statute, we remanded the case for the imposition of a sentence of life imprisonment. *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629.

The defendants in *Davis* were convicted of first degree murder and sentenced to death under N.C.G.S. § 14-17, as it had been interpreted in *Waddell* but before it was rewritten by the legislature. When *Davis* was decided, the North Carolina death penalty statute,

G.S. § 14-17, could not be saved as a mandatory statute, as *Waddell* had attempted to do, because of *Woodson*. Nor could it be saved as a discretionary statute because of *Furman*. The Court remanded the cases for the imposition of sentences of life imprisonment. *State v. Davis*, 290 N.C. 511, 227 S.E.2d 97.

Defendant argues that because in *Hill, Waddell, Covington* and *Davis* the capital cases were remanded for the imposition of life imprisonment, this case must be likewise remanded. This argument fails. In *Covington* and *Davis* the statutes which authorized defendants' death sentences had been invalidated by decisions of the United States Supreme Court. There remained no statutory authority for the imposition of any sentence other than life imprisonment. In *Hill* a majority of the Court determined that it was required to order the imposition of life imprisonment because the mandate of the United States Supreme Court had "reversed" the death sentence. In *Waddell* the Court attempted to save the statute by judicial interpretation but believed that retroactive application of the new interpretation to *Waddell* would violate the prohibition against *ex post facto* laws. Here, as we have already noted, our current statutory authority for the imposition of the death penalty remains in effect notwithstanding the United States Supreme Court decisions in *Mills* and *McKoy*. Unlike *Hill*, the United States Supreme Court has not reversed defendant's death sentence. It has merely vacated it and remanded to us for further proceedings.[2] Unlike *Waddell*, there are no *ex post facto* concerns.[3] Because of this extant statutory authority and the absence of *ex post facto* concerns, defendant remains subject to the death penalty pursuant to proceedings not inconsistent with *Mills* and *McKoy*.

Defendant also argues that we must impose a life sentence under N.C.G.S. § 15A-2000(d)(2), which provides in part:

The sentence of death shall be overturned and a sentence of life imprisonment imposed in lieu thereof by the Supreme Court . . . upon a finding that the sentence of death was

---

2. See discussion, *infra*, in Part IV.

3. The changes in our death penalty proceedings wrought by *Mills* and *McKoy* are both procedural in nature and ameliorative. To apply them retroactively to defendant does not violate the prohibition against state *ex post facto* laws contained in Article I, § 10 of the federal Constitution. *Dobbert v. Florida*, 432 U.S. 282, 53 L. Ed. 2d 344 (1977).

STATE v. McKOY

[327 N.C. 31 (1990)]

imposed under the influence of passion, prejudice, or any other arbitrary factor.

Defendant contends that his sentence was "imposed under the influence of . . . [an] arbitrary factor" by relying on this language in *McKoy*:

[I]t would be "the height of arbitrariness to allow *or* require the imposition of the death penalty" where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence.

*McKoy v. North Carolina*, 494 U.S. at ---, 108 L. Ed. 2d at 379 (quoting *Mills v. Maryland*, 486 U.S. at 374, 100 L. Ed. 2d at 393).

Adoption of defendant's argument would be a misapplication of our statute. The statute prohibits the imposition of the death penalty when this Court has concluded that it was actually imposed "under the influence of . . . [an] arbitrary factor." In that circumstance the statute requires the Court to set aside the death penalty and impose a sentence of life imprisonment. *McKoy* condemned the jury instructions here because of their *potential* for producing an arbitrary result. There has been no showing here that the potential for arbitrariness, that is, one or more holdout jurors, was actually realized or that the death sentence resulted from this kind of arbitrariness. There being no such showing, imposition of a life sentence is not required under N.C.G.S. § 15A-2000(d)(2).

Concluding, then, that the error committed here was trial error arising from the offending unanimity jury instructions, we apply N.C.G.S. § 15A-2000(d)(3), which provides that "[i]f the sentence of death and the judgment of the trial court are reversed on appeal for error in the post-verdict sentencing proceeding, the Supreme Court shall order that a new sentencing hearing be conducted in conformity with the procedures of this Article."

IV.

We turn now to the question of whether the *McKoy* error was harmless.

Defendant first contends that *McKoy* itself precludes a harmless error analysis. Because the United States Supreme Court said, "We therefore vacate petitioner's death sentence and remand for resentencing," *McKoy*, 494 U.S. at ---, 108 L. Ed. 2d at 376, defendant argues that the Court has already determined that the error

was not harmless and that defendant must at least be given a new sentencing hearing.

We disagree with this interpretation of *McKoy*. *McKoy*'s mandate to us reads:

We therefore vacate the petitioner's death sentence and remand this case to the North Carolina Supreme Court for further proceedings not inconsistent with this opinion.

*Id.* at ---, 108 L. Ed. 2d at 381. Considering the two passages from *McKoy* together, we conclude the United States Supreme Court intended to remand the matter to us for such further proceedings as we deem appropriate so long as they are not inconsistent with *McKoy*. We do not think by its reference to resentencing that the Court intended to preclude our engaging in a harmless error analysis.

[3] Defendant argues, for reasons having to do with the fairly limitless circumstances a juror might consider mitigating, that a *McKoy* error can never be harmless. We recognize the constitutional importance of preserving the jury's ability to consider under proper instructions all evidence proffered by a capital defendant that could reasonably mitigate the sentence to something less than death under the United States Supreme Court's death penalty jurisprudence beginning with *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978), and culminating most recently in *McKoy*. We recognize that because of this jurisprudence it would be a rare case in which a *McKoy* error could be deemed harmless. The error, moreover, is one of federal constitutional dimension, and the State has the burden to demonstrate its harmlessness beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). We are unwilling to say, however, that the State could never meet this burden,[4] and we think that, consistent with the federal Constitution, *McKoy* errors are subject to harmless error analysis. *Cf. Clemmons v. Mississippi*, --- U.S. ---, 108 L. Ed. 2d 725 (1990) (harmless error analysis approved when one of two aggravating circumstances found by the jury should not have been submitted).

---

4. A case in which there was little or no mitigating evidence proffered, or in which the jury found the existence of all proposed mitigating circumstances but nonetheless imposed the death penalty, could be a candidate for successful argument that a *McKoy* error was harmless, but we save decision on this point until such a case arises.

**[4]** Applying that analysis here, we conclude the State has not demonstrated the *McKoy* error to be harmless beyond a reasonable doubt. The jury failed to find unanimously several proposed mitigating circumstances supported by substantial evidence. These were: (1) the murder was committed while defendant was under the influence of mental or emotional disturbance; (2) for several decades defendant had exhibited signs of a mental or emotional disturbance or defect that went untreated; (3) defendant's mental or emotional disturbance was aggravated by poor physical health; and (4) defendant's ability to remember the events on the day of the killing was actually impaired. Some, but not all, jurors may have found credible the evidence in support of some or all of these circumstances and that the nonstatutory circumstances had mitigating value. Had each juror been allowed to consider such of these circumstances as each found to exist, and the evidence supporting them, in the final weighing process, we cannot say beyond a reasonable doubt that there would not have been a different result in the sentence. *See* N.C.G.S. § 15A-1443.

For the reasons given we remand the case to the Superior Court, Stanly County, for a new sentencing hearing not inconsistent with this opinion or the opinion of the United States Supreme Court in *McKoy*.

Remanded for new sentencing hearing.

Justice FRYE concurring.

While I concur in the opinion of Chief Justice Exum, I do not abandon my dissent on the basis that this defendant did not receive a fair and impartial trial. My reasons with respect thereto are set forth in *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988) (Frye, J., Exum, C.J., and Martin, J., dissenting).

Justice MARTIN concurring.

While I concur in the opinion of Chief Justice Exum, I do not abandon my dissent concerning the voluntariness of the confession of McKoy. My reasons with respect thereto are set forth in *State v. McKoy*, 323 N.C. 1, 372 S.E.2d 12 (1988) (Martin, J., Exum, C.J., and Frye, J., dissenting).