STATE OF NORTH CAROLINA v. RICKY LEE SANDERSON

No. 374A86

(Filed 29 August 1990)

1. **Criminal Law § 1352 (NCI4th)— capital sentencing—McKoy error**

Instructions in a capital sentencing proceeding contained *McKoy* error in that they required the jury to find each mitigating circumstance unanimously before any juror could consider that circumstance favorably to defendant and the State failed to demonstrate that the error was harmless in that there was evidence from which some jurors might have found the existence of mitigating factors submitted but not found.

**Am Jur 2d, Homicide § 513.**

STATE v. SANDERSON

[327 N.C. 397 (1990)]

**2. Criminal Law § 1352 (NCI4th)— McKoy error—review under Appellate Rule 2**

At least for all trials conducted after *State v. Kirkley*, 308 N.C. 196 (1983), and before *Mills v. Maryland*, 486 U.S. 367 (1988), the Supreme Court declines to require that a *McKoy* error be reviewed under the plain error standard when defendant failed to object at trial. The purpose of Appellate Rule 10(b)(2) was to place on parties the obligation of calling perceived errors to the trial court's attention at a time when the error could effectively be corrected, but objection at trial to the unanimity instruction would have been in vain before *Mills*. North Carolina Rules of Appellate Procedure, Rule 2.

**Am Jur 2d, Appeal and Error §§ 548, 549.**

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment sentencing him to death imposed by *Allen, J.*, presiding at the 27 May 1986 Criminal Session of Superior Court, IREDELL County. Heard in the Supreme Court on 14 November 1988.

*Lacy H. Thornburg, Attorney General, by William N. Farrell, Jr., Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant appellant.*

EXUM, Chief Justice.

Defendant argues he is entitled to a new sentencing proceeding, listing several assignments of error. Because of the decision in *McKoy v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369 (1990), we order a new sentencing proceeding.

Defendant pleaded guilty to charges of first degree murder and first degree kidnapping at arraignment at the 7 April 1986 Criminal Session of Superior Court, Davidson County, Ross, J., presiding. Venue for sentencing was changed, and sentencing proceedings were conducted at the 27 May 1987 Criminal Session of Superior Court, Iredell County, Allen, J., presiding. Judge Allen sentenced defendant to forty years' imprisonment in the kidnapping case (86CRS7161). After a capital sentencing proceeding in the murder

case (86CRS7160) and pursuant to the jury's recommendation, Judge Allen imposed the death penalty.[1]

## I.

Evidence presented by the State at the capital sentencing proceeding tended to show as follows: The victim, sixteen-year-old Sue Ellen Holliman, was last seen in her family's home on the afternoon of 14 March 1985. On 15 April 1985 a farmer plowing a field just east of Lexington found a sunken grave and contacted the sheriff's department. The victim's body was discovered in the grave. Three stab wounds were found in the chest area and were identified by a medical examiner as being the cause of death. The body was clothed with panties pulled down to the upper thighs, a partially torn bra, a T-shirt and sweat pants pulled down to the ankles. There was no evidence of sexual molestation. Approximately sixty-six feet from the grave site police found a smaller digging, apparently made with a shovel.

In May 1985 police arrested Elwood "Woody" Jones, an employee of a business managed by the victim's family, for the murder. Police initially questioned Jones on 15 May 1985. After two hours of interrogation Jones asked to take a polygraph test. Before taking the test Jones confessed to murdering Holliman. After confessing, Jones was taken to the field where the victim was found, and he showed officers where she had been buried and described how he had killed her.[2] Police officers then took Jones to a motel room where he gave a formal, written, signed confession consistent with the information he provided at the murder scene. Jones was formally arrested and charged with the murder of Sue Ellen Holliman.

---

1. Although this Court allowed defendant's motion to bypass the Court of Appeals in the kidnapping case, defendant has assigned no error nor made any argument in his brief concerning the sentence imposed in this case. Since defendant pleaded guilty to the kidnapping charge, he could only appeal issues relating to the sentence. N.C.G.S. § 15A-1444. It is not clear from defendant's notice of appeal that he ever intended to appeal the kidnapping case. In any event defendant has placed no issue before the Court relating to the kidnapping case, and we find no error in defendant's plea or sentence in this case.

2. Jones was taken to the farm adjoining the field and was asked by the officers to show them the exact location of the grave. After indicating two incorrect locations, Jones took the officers to the site of the smaller digging and explained he had started digging there, then moved to the exact location of the grave site and said he could "feel Suzi's presence." An officer testified nobody led Jones to the grave site or suggested how to locate it.

While in jail awaiting trial, Jones admitted his guilt to two inmates and an SBI informer.[3]

In January 1986 defendant was in Central Prison serving a sentence of life imprisonment plus 110 years for other crimes when he requested to speak to the sheriff investigating the Holliman murder case. On 21 January 1986 defendant spoke with four officers in Central Prison and confessed to this crime. Defendant's confession was videotaped on 22 January, and the tape was introduced as evidence at his sentencing proceeding.

On this tape defendant described getting up on the morning of 14 March 1985, injecting drugs, and driving to a neighborhood where he had previously worked. He approached a house intending to break inside. Defendant thought the house was unoccupied and was surprised upon opening an outer glass door to be confronted by the victim opening an inner door. Defendant asked to use the telephone, was refused, then rushed inside and covered the victim's mouth. Defendant asked the victim whether the house contained any money and she indicated "no." Defendant pulled the victim to his vehicle, put her in the front passenger side floorboard, and drove for over two hours. He was frightened and unable to determine what to do. Defendant drove down a rough dirt road, injected more drugs, and convinced himself that he was going to kill the victim. He removed a shovel from the trunk of the car and forced the victim into the trunk. He began digging, moved to an area with softer dirt, and dug a grave. After injecting more drugs defendant removed the victim from the trunk, choked her, laid her on the ground and stabbed her twice with a knife.[4] Defendant

---

3. Testimony from police officers suggests Woody Jones had knowledge of details of the murder that had not been made public and provided officers with descriptions of the crime consistent with physical evidence collected by the investigators. Defendant and Jones, however, were together in the Davidson County Jail in May 1985 after Jones' arrest for the murder and while defendant was incarcerated on unrelated charges. They also met again at Dorothea Dix Hospital where both were incarcerated and after Jones had given a detailed confession. Although the two men spent time together while at the hospital for twelve days, defendant claimed he never spoke to anyone of the murder and did not know how Jones knew of details about the crime provided by Jones in his confession.

4. Defendant described pulling down the victim's pants, seeing blue panties and finding she wore no bra. This description, and defendant's insistence that he stabbed the victim only twice, are inconsistent with the physical evidence State introduced at the sentencing proceeding.

buried the victim and drove home, throwing the murder weapon off a bridge.[5]

The State also introduced physical evidence tending to link defendant with the murder. A pubic hair consistent with that of the victim was found in defendant's vehicle, and several polymer fibers and paint samples found on the victim's clothing matched material found both in the passenger compartment and the trunk of defendant's vehicle.

Defendant introduced evidence tending to show he had become more interested in religion while in prison. A church pastor testified defendant requested visits from him and sought information to better understand the Scriptures. The pastor also testified defendant had adjusted as well as anyone could to prison life.

Pursuant to N.C.G.S. § 15A-2000, the jury found as aggravating circumstances that defendant had committed murder to avoid lawful arrest and that the killing was done in commission of a kidnapping. It rejected the aggravating circumstance that the crime was especially heinous, atrocious or cruel. Four of six mitigating circumstances were found: Defendant's confession was responsible for Woody Jones' release, defendant's plea relieved the State of having to prove guilt, defendant's conduct in jail was good, and defendant had adjusted well to prison life. The jury rejected the mitigating circumstances that defendant's capacity to appreciate the criminality of his conduct or conform his conduct to law was impaired, and failed to find the existence of any unspecified circumstances arising from the evidence deemed to have mitigating value. The jury determined the mitigating circumstances were insufficient to outweigh the aggravating circumstances and the aggravating circumstances, when considered with the mitigating circumstances, were sufficiently substantial to warrant the death penalty. The jury recommended and the trial court accordingly entered judgment sentencing defendant to death.

II.

[1] Defendant is entitled to a new sentencing proceeding pursuant to the recent decision of the United States Supreme Court in *McKoy*

___

5. Defendant said he saw no hope and did not want to serve a life sentence. He admitted telling a deputy sheriff that he believed he would go to hell if he committed suicide, but if he were put to death he would have a chance of going to heaven. He reiterated his guilt, however, and could offer no explanation as to how Jones knew about the crime.

*v. North Carolina*, 494 U.S. ---, 108 L. Ed. 2d 369. *See also State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426 (1990).

In its sentencing instructions to the jury the trial court addressed each mitigating circumstance submitted to the jury and instructed for each, "If you do not so find unanimously, then, [that] this is a mitigating circumstance by a preponderance of the evidence, you will also indicate by having your foreman write 'no' in that space." Regarding the weighing of aggravating and mitigating circumstances for the ultimate sentencing decision, the trial court instructed the jury that the State had to prove to the jury "that any mitigating circumstance[s] you have found are insufficient to outweigh any aggravating circumstance you have found; and third, that any aggravating circumstances you have found are sufficiently substantial to call for the imposition of the death penalty when considered with any mitigating circumstances that you have found."

In *McKoy* the United States Supreme Court held unconstitutional North Carolina's capital sentencing jury instructions which required the jury to find the existence of a mitigating circumstance unanimously in order for any juror to consider that circumstance when determining the ultimate recommendation as to punishment. The Court reasoned that North Carolina's "unanimity" requirement was constitutionally infirm because it "prevent[ed] the sentencer from considering all mitigating evidence" in violation of the eighth and fourteenth amendments. *McKoy*, 494 U.S. at ---, 108 L. Ed. 2d at 376. *See also State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426.

The instructions at defendant's trial contained *McKoy* error. They required the jury to find each mitigating circumstance unanimously before any juror could consider that circumstance favorably to defendant in the ultimate sentencing decision. Defendant is therefore entitled to a new sentencing proceeding unless the error was harmless. *State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426.

For constitutional error not to be reversible, the State must demonstrate it is harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443.

The State has failed to meet this burden. The jury failed to find unanimously the mitigating circumstance that defendant's capacity to appreciate the criminality of his act or to conform his behavior to law was impaired. There was evidence from which at least some jurors might have found the existence of this circumstance.

STATE v. SANDERSON

[327 N.C. 397 (1990)]

Defendant's videotaped confession tended, in part, to support the circumstance that defendant's capacity to appreciate the criminality of his act or to conform his behavior to law was impaired. Defendant described himself as having taken large amounts of drugs on the day the murder was committed and said he injected two syringes of "dope" just before stabbing the victim. When asked by the interrogating officers why he committed the crime, defendant responded, "Why did I do it all? I don't know. I am going to say drugs. I would not . . . I feel like in my heart I would not go out and do this if I was not on some kind of drugs." This evidence tends to support the diminished capacity mitigating circumstance.

We cannot say beyond a reasonable doubt that the erroneous unanimity jury instruction did not preclude one or more jurors from considering in mitigation defendant's drug intoxication as diminishing his capacity to appreciate the criminality of his act or to conform his behavior to law. Neither can we say beyond a reasonable doubt that had such jurors been permitted under proper instructions to consider this circumstance, they would nevertheless have voted for the death penalty rather than life imprisonment. *See State v. McKoy*, 327 N.C. 31, 394 S.E.2d 426; *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990).

[2] The State argues that defendant did not object to the instructions at trial; therefore, under Appellate Rule 10(b)(2) this assignment of error must be addressed under the plain error rule. Rule 10(b)(2) precludes a party from assigning error to any portion of a jury instruction unless that party objected at trial before the jury retired to deliberate and stated "distinctly that to which he objects and the grounds of his objection." Error in instructions, however, may nevertheless be assigned on appeal if it is "plain error," that is, error that had a probable impact on the jury's determination. *State v. Hannah*, 316 N.C. 362, 341 S.E.2d 515 (1986); *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983).[6] To determine that an instructional error amounts to plain error, "the appellate court 'must be convinced that absent the error the jury probably would have reached a different verdict.'" *Hannah*, 316 N.C. at 367-68, 341 S.E.2d at 517 (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

---

6. See also App. R. 10(c), which incorporates the common law "plain error" rule but which was not effective until after appeal was taken in this case.

STATE v. SANDERSON

[327 N.C. 397 (1990)]

At least for all trials conducted after *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), and before *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384 (1988), we decline to require that a *McKoy* error be reviewed under the plain error standard when the defendant failed to object at trial to the error. The purpose of Appellate Rule 10(b)(2) was to place on parties the obligation of calling perceived errors to the trial court's attention at a time when the error could be effectively corrected. Both the parties and the judicial system could thereby be saved from the time and expense of a new trial because of instructional error which the parties perceived in silence at the first trial. *Kirkley* held there was no constitutional or other error in North Carolina's jury instructions requiring jury unanimity in the finding of mitigating circumstances. At least until *Mills*, which cast some doubt on the validity of *Kirkley*, objection at trial to the unanimity instruction would have been in vain insofar as it would have given the trial judge an opportunity to "correct" the instructional "error" because during the period between *Kirkley* and *Mills* no lawyer or judge in North Carolina had reason to believe there was error in the instruction which needed correcting. The purpose of Appellate Rule 10(b)(2) would not have been served even if defendant had timely objected to the unanimity instruction.

This case was tried after *Kirkley* and before *Mills*. We have elected, therefore, in the interest of fair proceeding, not to apply Appellate Rule 10(b)(2) and to apply, instead, Appellate Rule 2,[7] and we have considered the *McKoy* error as if defendant had timely objected to the error at trial.

In the kidnapping case we find no error. The murder case is remanded for a new sentencing proceeding.

Case No. 86CRS7161—No error.

Case No. 86CRS7160—Remanded for new sentencing proceeding.

---

7. Appellate Rule 2 provides:

"To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions."