STATE OF NORTH CAROLINA v. MICHAEL RAY QUESINBERRY

No. 95A88

(Filed 7 March 1991)

**Criminal Law § 1352 (NCI4th) — McKoy error — sufficient evidence of impaired capacity mitigating circumstance — new sentencing hearing**

The State failed to demonstrate that the trial court's erroneous instruction requiring unanimity on mitigating circumstances in a capital sentencing proceeding was harmless beyond a reasonable doubt, and a sentence of death imposed on defendant for first degree murder is vacated and the case is remanded for a new capital sentencing proceeding, where the jury failed unanimously to find the submitted statutory mitigating circumstance that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired because of his drug intoxication, and defendant's evidence that he abused drugs and alcohol over an eight-year period and that he consumed two beers and smoked five marijuana cigarettes during the six and one-half hours immediately preceding the murder was sufficient to permit one or more jurors to find the impaired capacity mitigating circumstance. Even though there was evidence tending to indicate that defendant continued to function normally despite the consumption of drugs and alcohol, one or more jurors, acting under constitutional instructions, may well have given the greater weight to defendant's testimony that he felt "high" and to their understanding of the effects of such extensive consumption, both over time and more immediately, on defendant's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law.

**Am Jur 2d, Criminal Law §§ 598, 599, 893.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

Justice MEYER dissenting.

Justice MITCHELL joins in this dissenting opinion.

STATE v. QUESINBERRY

[328 N.C. 288 (1991)]

ON remand by the United States Supreme Court, --- U.S. ---, 108 L. Ed. 2d 603 (1990), for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Heard on remand in the Supreme Court 13 February 1991.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was convicted of the first-degree murder of Van Buren Luther and sentenced to death. This Court found no error in the guilt phase of defendant's trial but ordered a new sentencing proceeding. *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 (1987). Following the new sentencing proceeding, defendant was again sentenced to death. This Court found no error and upheld the sentence. *State v. Quesinberry*, 325 N.C. 125, 381 S.E.2d 681 (1989).

Subsequently, the United States Supreme Court vacated the judgment and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Quesinberry v. North Carolina*, --- U.S. ---, 108 L. Ed. 2d 603 (1990). On 3 October 1990 this Court ordered the parties to file supplemental briefs addressing the *McKoy* issue.

The evidence supporting defendant's conviction and death sentence is summarized in this Court's prior opinions—*State v. Quesinberry*, 325 N.C. 125, 381 S.E.2d 681; *State v. Quesinberry*, 319 N.C. 228, 354 S.E.2d 446 — and will not be repeated here except as necessary to discuss the question before us on remand by the United States Supreme Court.

In *McKoy v. North Carolina*, the United States Supreme Court held unconstitutional under the eighth and fourteenth amendments of the federal constitution jury instructions directing that, in making the final determination of whether death or life imprisonment is imposed, no juror may consider any circumstance in mitigation of the offense unless the jury unanimously concludes that the circumstance has been proved. *McKoy*, 494 U.S. 433, 108 L. Ed. 2d 369. Our review of the record reveals, and the State concedes, that the jury here was so instructed. Specifically, the trial court

instructed the jury to answer each mitigating circumstance "no" if it did not unanimously find the circumstance by a preponderance of the evidence. Thus, the sole issue is whether this is the "rare case in which a *McKoy* error could be deemed harmless." *State v. McKoy*, 327 N.C. 31, 44, 394 S.E.2d 426, 433 (1990). "The error . . . is one of federal constitutional dimension, and the State has the burden to demonstrate its harmlessness beyond a reasonable doubt." *Id.*; N.C.G.S. § 15A-1443(b) (1988). On the record before us, we conclude that the State has not carried this burden.

The trial court submitted ten possible mitigating circumstances:

1) Michael Ray Quesinberry has no significant history of prior criminal activity.

. . . .

2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired because he was under the influence of drugs.

. . . .

3) The age of the defendant at the time of the murder.

. . . .

4) Prior to July 20, 1984, Michael Ray Quesinberry had no prior history of assaultive behavior.

. . . .

5) Since the arrest of the defendant for the offense before you the defendant has adapted well to life in custody and the defendant has shown no tendancies [sic] for violence against others.

. . . .

6) The defendant voluntarily confessed to the crime after being warned of his right to remain silent and without asking for or without assistance of counsel.

. . . .

7) Upon his arrest, the defendant cooperated with law enforcement officers.

8) The crime committed by the defendant was out of character for the defendant.

. . . .

9) The defendant is remorseful for the crime.

. . . .

10) Any other circumstances arising from the evidence.

. . . .

The jury unanimously found circumstances (1) and (4)-(9). Acting under the constitutionally defective instruction recited above, it rejected circumstances (2), (3) and (10).

The evidence relevant to the first of the submitted mitigating circumstances not found — "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired because he was under the influence of drugs" — was from defendant's testimony and was as follows:

Defendant, who was twenty-two years old on the date of the murder, had been "smoking pot and drinking alcohol" since he was fourteen. By age fifteen-and-a-half he "was smoking pot, smoking hash, doing acid, speed." At about age seventeen-and-a-half, defendant entered the United States Army. He consumed illicit drugs and alcohol throughout his Army career. The Army ultimately sent him to a drug and alcohol rehabilitation center. When defendant finished his "schooling" at the center, he still tested positive for drugs, and the Army discharged him.

Upon his discharge defendant lived with his parents briefly, then married and moved in with his wife's parents. He continued to smoke marijuana and take other illegal drugs. He "was smoking pot, doing acid, speed, and smoking hash, and cocaine every now and then." He had a "physical need for the dependency of these drugs."

In the early part of 1984, an acquaintance arranged for defendant to find employment in Randolph County, North Carolina, the locale of the murder. He first acquired drugs there after two days on the new job. He never had trouble getting drugs in the plant or in the community.

On 20 July 1984, the day of the murder, defendant left home for work about 7:00 a.m. He smoked a marijuana cigarette on the way to work. During a 9:15 a.m. break, he "smoked a joint." Thus, by 9:15 a.m. he had smoked two joints of marijuana. Between the break and lunchtime, he smoked another joint. At lunchtime defendant and a co-worker smoked a joint. This was his fourth joint for the day. Shortly thereafter, defendant "swapped a marijuana cigarette for some beer." He drank two beers and felt "high." He returned to work for a while and "started feelin' worse," so he went out and smoked another joint. He smoked this, his fifth joint for the day, "somewhere around" 1:00 p.m.

Defendant then left the plant and went to the victim's store. The precise time he inflicted the blows which resulted in the victim's death is unknown, but the victim's unconscious body was found around 1:37 p.m.

The evidence thus demonstrated a pattern of drug and alcohol abuse extending over a period of approximately eight years. More relevantly, it showed that over the approximately six to six-and-one-half hours immediately preceding the murder, defendant consumed two beers and smoked five marijuana cigarettes. In light of this evidence, we cannot conclude beyond a reasonable doubt that the erroneous unanimity jury instruction did not preclude one or more jurors from considering in mitigation defendant's drug intoxication as diminishing his capacity to appreciate the criminality of his act or to conform his conduct to the requirements of the law. Nor can we conclude beyond a reasonable doubt that had such jurors been permitted, under proper instructions, to consider this circumstance, they would nevertheless have voted for the death penalty rather than life imprisonment. *See State v. Sanderson*, 327 N.C. 397, 403, 394 S.E.2d 803, 806 (1990).

In support of its argument that the error was harmless the State points to evidence tending to indicate that defendant continued to function normally despite the consumption of drugs and alcohol shown. Such evidence notwithstanding, one or more jurors, acting under constitutional instructions, may well give the greater weight to defendant's testimony that he felt "high" and to their understanding of the effects of such extensive consumption, both over time and more immediately, on defendant's capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law. Because the circumstance in question

is statutory, N.C.G.S. § 15A-2000(f)(6), it is presumed to have mitigating value if found. *State v. Pinch*, 306 N.C. 1, 27, 292 S.E.2d 203, 224, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled in part on other grounds, State v. Wilson*, 322 N.C. 117, 367 S.E.2d 589 (1988). A single juror's vote could change the sentencing result from death to life imprisonment. *State v. Brown*, 327 N.C. 1, 30, 394 S.E.2d 434, 452 (1990). Given the evidence, we cannot conclude beyond a reasonable doubt that the constitutionally erroneous instruction did not prevent at least one juror from finding the circumstance to exist, giving it mitigating value, and changing his or her vote from death to life imprisonment as a result.

Accordingly, the sentence of death is vacated, and the case is remanded to the Superior Court, Randolph County for a new capital sentencing proceeding. *See State v. McNeil*, 327 N.C. 388, 397, 395 S.E.2d 106, 112 (1990). Our disposition on the impaired capacity circumstance makes it unnecessary for us to consider the effect of the constitutionally erroneous instruction on the other mitigating circumstances not found.

Death sentence vacated; remanded for new capital sentencing proceeding.

Justice MEYER dissenting.

Defendant, in July 1984, bludgeoned to death with a ball peen hammer the seventy-one-year-old victim during a preplanned armed robbery of the victim's rural country store. The victim was struck ten times and died four hours later in excruciating pain. In April 1987, this Court, in a four-to-three decision, with Justices Martin, Meyer, and Mitchell dissenting, found error in the sentencing phase of defendant's trial and ordered a new sentencing hearing. After the new sentencing hearing, this Court, in July 1989, with Chief Justice Exum concurring and Justice Frye dissenting as to sentence, affirmed defendant's death sentence. Now, over six and a half years after the murder, the majority, upon finding the *McKoy* error not to be harmless, has ordered yet another sentencing hearing. While I readily concede the presence of *McKoy* error, I conclude that such error was harmless beyond a reasonable doubt.

At the conclusion of the resentencing hearing, the trial court submitted to the jury one aggravating circumstance and ten miti-

gating circumstances. The jury unanimously found the aggravating circumstance of pecuniary gain to be present. The jury unanimously found the following mitigating circumstances: "1) Michael Ray Quesinberry has no significant history of prior criminal activity"; "4) Prior to July 20, 1984, Michael Ray Quesinberry had no prior history of assaultive behavior"; "5) Since the arrest of the defendant for the offense before you the defendant has adapted well to life in custody and the defendant has shown no tendancies [sic] for violence against others"; "6) The defendant voluntarily confessed to the crime after being warned of his right to remain silent and without asking for or without assistance of counsel"; "7) Upon his arrest, the defendant cooperated with law enforcement officers"; "8) The crime committed by the defendant was out of character for the defendant"; and "9) The defendant is remorseful for the crime."

The jury did not unanimously find the following submitted mitigating circumstances to be present: "2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired because he was under the influence of drugs"; "3) The age of the defendant at the time of the murder"; and "10) Any other circumstances arising from the evidence."

Because the resentencing jury was required to be unanimous in its findings of mitigating circumstances and the individual jurors were not allowed to weigh mitigating circumstances not unanimously found, the *McKoy* error unquestionably occurred. In order to declare the *McKoy* error to be harmless, this Court must find beyond a reasonable doubt that no different recommendation would have resulted if the individual jurors had been permitted to consider mitigating circumstances not unanimously found. *State v. Jones*, 327 N.C. 439, 396 S.E.2d 309 (1990); *State v. Sanders*, 327 N.C. 319, 395 S.E.2d 412 (1990), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 782 (1991); *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990). The burden is on the State to prove beyond a reasonable doubt that the jury would have recommended death if each individual juror had been allowed to consider all the mitigating circumstances which he or she found to be present from the evidence.

I am convinced beyond a reasonable doubt that the jury would have recommended the sentence of death even if the instructions had not required unanimity in finding mitigating circumstances, because there was little or no evidence presented to the jury upon

which a reasonable juror could base a finding of any of the three mitigating circumstances which the jury did not unanimously find to exist. *State v. McKoy*, 327 N.C. 31, 44 n.4, 394 S.E.2d 426, 433 n.4 (1990).

### Circumstance (2): Impaired Capacity

The majority concludes that there was sufficient evidence of impaired capacity to permit a reasonable juror to find this mitigating circumstance in the absence of the unanimity requirement. I conclude that the evidence of impaired capacity through use of drugs at the time the crime was committed was insubstantial at best and that no reasonable juror would have found this circumstance to exist had the jury been correctly instructed.

While there was certainly evidence that defendant smoked four marijuana cigarettes and shared two others with friends, that he had two beers during the course of the morning before the murder, and that he had a long history of drug abuse, there is no evidence that defendant was under the influence of drugs *at the time of the murder*. Defendant testified that he smoked one marijuana cigarette at 7:00 a.m. on his way to work. He stacked furniture frames until 9:00 a.m. and then smoked another marijuana cigarette. He smoked another marijuana cigarette between break time and lunchtime. He shared two other marijuana cigarettes with co-workers at lunchtime and drank two beers. He testified that, at around noon, he felt high and a little nauseated. He went back inside and worked for a while. Around 1:00 p.m., he went to his truck and smoked another marijuana cigarette. He decided to go home, and he drove the back way to avoid being stopped for improper registration and driving without insurance on his truck. He drove to Luther's Grocery, sat in the truck for a while, and contemplated what he was going to do. He then took his hammer, went inside, and beat Mr. Luther on the head. He took a pouch full of money and drove back to Asheboro. Defendant knew he had killed Mr. Luther, but he went back to work and worked the remainder of the afternoon, leaving work five minutes early at 3:25 p.m. and driving to Asheboro. There was testimony that it takes the rescue squad twenty to twenty-five minutes to drive from Asheboro to Luther's Grocery on the main roads. The back roads taken by defendant were winding and more difficult to drive.

There was no evidence that defendant was under the influence of drugs *at the time of the murder*. All the evidence is to the

contrary. That his physical faculties were *not* appreciably impaired at the time of the murder is shown by his ability to work at his job; to jump-start his truck; to drive from Asheboro to Luther's Grocery, a distance of some twenty miles, using winding back roads; and then to drive back to Asheboro by the same route. That his mental faculties were not impaired is shown by the evidence that he decided to take back roads to avoid being stopped for improper registration and that he threw out the money bags and murder weapon on the way back in order to destroy evidence of the crime. When he was apprehended at 4:00 p.m., he did not tell officers he had been under the influence of drugs.

Nor could a reasonable juror have found from the evidence presented that defendant's long-term use of drugs *before* the day of the murder impaired him on that day. The evidence shows that defendant functioned all of his adult life while using marijuana and other drugs and that he held a job, supporting his wife and child, all while using drugs. The drug use on the day of the murder was no different from any other, except that on other occasions, he had used hashish, acid, and speed. On the day he murdered Mr. Luther, he only had four to six marijuana cigarettes and two beers over a period of six hours. There was no testimony or evidence that this amount of marijuana consumed over a period of six hours would impair defendant's capacity to appreciate the criminality of his conduct or to obey the law.

In *State v. Sanderson*, 327 N.C. 397, 394 S.E.2d 803 (1990), cited by the majority, this Court found that Sanderson had taken large amounts of drugs at the time of the murder and had injected two syringes of "dope" just before the murder. There was also evidence that when Sanderson confessed to the crime, he testified to being on drugs at the very time of the murder. This is far greater evidence of diminished capacity than Quesinberry presented as to his use of marijuana cigarettes and two beers over a period of six hours. This Court, in *State v. McNeil*, 327 N.C. 388, 395 S.E.2d 106 (1990), also found that evidence of consumption of substantial amounts of alcohol on the weekend of one of the murders was sufficient to allow a reasonable juror to find the impaired capacity mitigating circumstance. In *McNeil*, however, there was expert testimony that consumption of alcohol impaired McNeil's judgment and was a contributing factor to his behavior. Defendant presented no evidence in this case that four to six marijuana cigarettes plus two beers over the course of six hours could have

impaired defendant's mental capacity, and this Court cannot presume that it could have.

I now address the mitigating circumstances, which defendant contends there was evidence to support but which, because of its conclusion as to circumstance (2), the majority found unnecessary to address.

### Circumstance (3): Defendant's Age at the Time of the Crime

There was nothing about the defendant's age of twenty-two years which was mitigating. The defendant lacked neither chronological nor mental maturity. At age twenty-two, he had attained the age of majority and was fully responsible for his acts. He had been self-supporting since the age of sixteen. He had been emancipated since the age of seventeen and a half, when he went into the Army. He married at the age of twenty. Any one of these circumstances qualified him as an adult and as fully emancipated under N.C.G.S. § 7A-717.

Defendant contends that his limited educational experience somehow has a bearing on the age mitigating circumstance, since he quit school at the age of fifteen and a half while in the ninth grade. The evidence shows that defendant's educational experience was neither minimal nor even limited. Defendant went into the military, had no trouble getting through basic training, and successfully completed the course in small engine repair given by the military. The evidence further shows defendant had sufficient intelligence to complete his GED while in prison.

Defendant had been in the military since age seventeen and a half, had been self-supporting, had married and had a child, had lived in different areas of the United States, had met and seen a variety of people, and thus had a varied and mature life experience. The evidence in this case simply does not support the proposition that defendant's age was a mitigating circumstance.

### Circumstance (10): Any other Circumstances Arising from the Evidence

Defendant contends that there are several items of evidence which a juror could find existed and had mitigating value. Some of these items bear no nexus to the case, and the remainder were subsumed in the mitigating circumstances actually submitted.

None of these items were argued to the jury at the sentencing hearing as being mitigating.

1. *Honorable Discharge*: Defendant was disciplined in the military for drug abuse, took drugs during the rehabilitation program, and was discharged from the military when he was again tested and found to be positive for drugs. Defendant received a Chapter 8 discharge, which was a discharge under honorable conditions except for drug and alcohol abuse. This simply does not rise to the level of evidence of an honorable discharge. No reasonable juror could find this type of discharge to be a mitigating circumstance.

2. *GED*: The fact that defendant completed his GED while in prison is subsumed in the mitigating circumstance that defendant adapted well to life in custody, which the jury found.

3. *Good Family Man*: Defendant was a drug abuser from the age of fourteen. The evidence shows that defendant was a problem to his parents because of his drug abuse, to the point that his father and the police chief talked him into going into the military at age seventeen and a half. When he married his wife, he was spending $40.00 a week on drugs. At the time of the murder, he was spending $45.00 a week on drugs while earning $105.00 a week at his job. His family's needs were not met because of his drug use. There was no evidence that defendant treated his family well and no evidence from which a juror could find this circumstance to mitigate the crime.

4. *Defendant's Upbringing*: There is no evidence that defendant had few opportunities in his life or came from very disadvantaged conditions. Defendant had a normal childhood living in a home with his father, mother, sister, and brother. His father worked as a coal miner, and his mother stayed home to care for the children. Defendant grew up on the farm, playing with the cows and horses, and played basketball with friends. All his life, there were people to help defendant, including his grandmother; the chief of police; the army, which gave him free drug rehabilitation treatment; his employer in North Carolina, who gave him a house rent-free for repairs; and his wife. There is no evidence of mitigating value of defendant's lack of opportunity or disadvantaged family life.

5. *Work Record*: Defendant's employer did not testify on his behalf, and the evidence showed that defendant smoked marijuana

on the job. There was simply no evidence that defendant had a good work record which would be of mitigating value.

Two juries have considered the facts of this case, the circumstances of the crime, and defendant Quesinberry's mitigating evidence; and both juries have recommended the sentence of death. While *McKoy* error occurred during the resentencing of the defendant, it was harmless beyond a reasonable doubt. I vote to find the *McKoy* error harmless in this case and to reaffirm the sentence of death.

Justice MITCHELL joins in this dissenting opinion.