STATE OF NORTH CAROLINA v. ELTON OZELL McLAUGHLIN

No. 637A84

(Filed 3 October 1991)

1. **Criminal Law § 1352 (NCI4th) — McKoy error—jury's negative answers to mitigating circumstances—unanimity not shown**

The fact that the jury in a capital sentencing proceeding was not instructed that failure to agree on a mitigating circumstance did not mean that the circumstance did not exist, when coupled with the court's instruction that the jury did not have to answer every issue but could leave any of them blank, did not show that the jury was unanimous in the two mitigating circumstances to which it answered "no" so as to render harmless *McKoy* error requiring unanimity on mitigating circumstances.

STATE v. McLAUGHLIN

[330 N.C. 66 (1991)]

**Am Jur 2d, Criminal Law § 600; Trial § 1113.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

2. **Criminal Law § 1361 (NCI4th) — capital case — impaired capacity mitigating circumstance — sufficiency of evidence**

There was sufficient evidence for one or more jurors in a capital sentencing proceeding to find the mitigating circumstance that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired where there was evidence that defendant had an I.Q. of only 72, and that he had ingested marijuana, wine, beer and "two hits of acid" on the day he killed the victim.

**Am Jur 2d, Criminal Law §§ 598, 599.**

3. **Criminal Law § 1356 (NCI4th) — mitigating circumstance — good character and reputation — sufficiency of evidence — McKoy error not harmless**

There was sufficient evidence for one or more jurors in a capital sentencing proceeding to find the mitigating circumstance that defendant had a good character and reputation in the community where several witnesses testified to defendant's good character and reputation and related anecdotes of his acts of kindness and consideration for others. *McKoy* error with respect to this circumstance was not rendered harmless by contrary evidence of defendant's bad character, the jury's finding that defendant was a triple murderer, and the jury's findings as aggravating circumstances that defendant had previously been convicted of a felony involving violence to the person and that the murder in this case was a contract killing for pecuniary gain, since it cannot be said beyond a reasonable doubt that at least one of the jurors would not have found and given weight to this mitigating circumstance had the jury been properly instructed.

**Am Jur 2d, Criminal Law §§ 598-600; Trial § 1113.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

Justice MEYER dissenting.

Justices MITCHELL and WHICHARD join in this dissenting opinion.

**STATE v. McLAUGHLIN**

[330 N.C. 66 (1991)]

ON remand by the United States Supreme Court, 494 U.S. ---, 108 L.Ed.2d 601 (1990), for further consideration in light of *McKoy v. North Carolina*, 494 U.S. ---, 108 L.Ed.2d 369 (1990). Heard on remand in the Supreme Court 11 April 1991.

Defendant was convicted of the first degree murders of James Elwell Worley, Shelia Denise Worley, and Psoma Wine Baggett. He was sentenced to life imprisonment for two of the murders and sentenced to death for the murder of James Worley. This Court found no error in the convictions and affirmed the sentences imposed. *State v. McLaughlin*, 323 N.C. 68, 372 S.E.2d 49 (1988).

Subsequently, the United States Supreme Court vacated the sentence of death and remanded the case to this Court for further consideration in light of *McKoy v. North Carolina*, 494 U.S. ---, 108 L.Ed.2d 369. *McLaughlin v. North Carolina*, 494 U.S. ---, 108 L.Ed.2d 601. On 3 October 1990, this Court ordered the parties to file supplemental briefs addressing the *McKoy* issue.

The State's evidence showed that the defendant and Eddie Carson Robinson murdered James Elwell Worley in a contract killing for which Mr. Worley's wife was to pay them. Approximately one month later, they killed Mr. Worley's widow and her daughter to keep Mrs. Worley from talking to law enforcement officers.

The court submitted two aggravating circumstances to the jury which were whether the defendant had previously been convicted of a felony involving the use of violence to the person and whether the murder was committed for pecuniary gain. The jury answered in the affirmative as to both issues. Six mitigating circumstances were submitted to the jury. The jury answered in the affirmative to three of them which were that the defendant aided in the apprehension of another capital felon, that the defendant was of low mentality with an I.Q. of 72, and that the defendant had been employed for fourteen years and was a good worker. The jury answered "no" to the mitigating circumstance that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired and answered "none" as to whether there were any other circumstances of mitigating value. The jury did not answer as to a mitigating circumstance that the defendant was a person of good character and reputation in the community.

## STATE v. McLAUGHLIN

[330 N.C. 66 (1991)]

*Lacy H. Thornburg, Attorney General, by Joan Herre Byers, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for the defendant appellant.*

WEBB, Justice.

[1] The State concedes the jury charge in this case is in error under *McKoy* but it argues such error is harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1988). It says this is so because although the jury was instructed that it must be unanimous in order to find a mitigating circumstance, it was not instructed that failure to agree on a mitigating circumstance did not mean the circumstance did not exist. This, says the State, coupled with the fact that the court also instructed the jury that it did not have to answer every issue but could leave any of them blank, makes it apparent that the jury was unanimous in the two mitigating circumstances to which it answered "no."

This argument by the State is too speculative to convince us the jury was unanimous in answering no and none to the two mitigating circumstances. The jury was told it would have to be unanimous to answer affirmatively the issues as to mitigating circumstances and it could consider only those mitigating circumstances that it found unanimously. We presume the jury followed the instructions of the court. If it did, one or more of the jurors could have been convinced that a mitigating circumstance existed but did not consider it pursuant to the instructions of the court.

[2] In further argument that the error was harmless in this case, the State contends there was not sufficient evidence for the jury to find the mitigating circumstance that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired. The State says the only evidence was the low I.Q. of the defendant and the use of drugs by the defendant shortly before the killing. The evidence showed that in addition to having a low I.Q., the defendant, on the day he killed Mr. Worley, had ingested marijuana, wine, beer and "two hits of acid." This evidence would support the finding of this mitigating circumstance. The jury could have found that a person who had ingested this quantity of drugs and alcohol had his judgment impaired and such impairment had affected his ability

to appreciate the criminality of his conduct. *State v. Sanderson*, 327 N.C. 397, 394 S.E.2d 803 (1990).

[3]   The State concedes that there was some evidence to support a finding that the defendant had a good reputation in the community. It says the instruction in regard to this proffered mitigating circumstance was harmless. The State asks us to consider the aggravating circumstances found in comparison with this mitigating circumstance. It says the defendant in this case had been found by the jury to be a triple murderer. The jury found as one aggravating circumstance that the defendant had previously been convicted of a felony involving violence to the person. This was based on a crime in which the defendant killed a man and stole his automobile. The other aggravating circumstance found by the jury was that the murder in this case was for a pecuniary gain. This circumstance was based on the commission of a contract killing.

The State says that we can safely assume that testimony that the defendant's character and reputation was good would not offset the two substantial aggravating circumstances that were found. This is particularly so, says the State, when we consider other evidence of the defendant's character. The evidence was that the defendant when he was younger had shot his father while trying to shoot someone else, that he had left his daughter with his mother to raise and that he was having an affair with a married woman while still possessing a live-in girlfriend. The State says that this evidence as to the defendant's character and reputation kept the jury from giving any weight to testimony that the defendant's character and reputation were good.

There was certainly evidence that the defendant did not have a good character and reputation. There was evidence contra, however. Several witnesses testified to the defendant's good character and reputation and related anecdotes of his acts of kindness and consideration for others. The fact that the jury did not answer the issue as to this mitigating circumstance is some indication that the jury was divided with some wanting to answer in the affirmative. We cannot say that we are satisfied beyond a reasonable doubt that at least one of the jurors would not have used this mitigating circumstance to recommend life in prison if the jury had been properly instructed. *State v. Brown*, 327 N.C. 1, 394 S.E.2d 434 (1990).

STATE v. McLAUGHLIN

[330 N.C. 66 (1991)]

The State also argues that there was no evidence to support a finding of the "catch all" mitigating circumstance of any other circumstance of mitigating value. The defendant does not point us to any such evidence. Because we hold that error in regard to the other two mitigating circumstances requires a new sentencing proceeding, we do not discuss this mitigating circumstance. It may be submitted at a new sentencing proceeding if the evidence supports it.

For the reasons stated in this opinion, there must be a new sentencing proceeding.

Death sentence vacated; remanded for new sentencing proceeding.

Justice MEYER dissenting.

Defendant in this case is a triple murderer. He and Eddie Robinson murdered James Worley in a contract killing at the behest of Mrs. Worley and burned James Worley's body to conceal the crime. One month later, defendant killed Mrs. Worley to keep her from informing the police of the contract killing and also killed Mrs. Worley's four-year-old daughter. Mrs. Worley and the child were beaten and drowned. Defendant received the death penalty for the contract killing of Mr. Worley and life sentences for the murders of Mrs. Worley and the child. The State concedes that *McKoy* error is present in this case but contends that the error was harmless. I agree and therefore dissent from the majority opinion.

Because we are concerned with whether a *reasonable* juror might have found certain circumstances to have been mitigating in the absence of the erroneous *McKoy* instructions, it is appropriate to review the details of defendant's crime. The following summary is taken from our earlier opinion in this case:

These three cases arise from a contract murder which spawned two further murders committed in an effort to eliminate witnesses and evade justice.

James Elwell Worley was killed on 26 March 1984. Little more than a month later, on 29 April 1984, his wife, Shelia Denise Worley, and her daughter, Psoma Wine Baggett, were killed. The State's evidence tended to show the following events.

STATE v. McLAUGHLIN

[330 N.C. 66 (1991)]

Sometime before 26 March 1984 defendant approached an acquaintance, Eddie Carson Robinson (who testified for the State at defendant's trial), about an offer defendant had received from Shelia Denise Worley to "take care of her husband" for between $3,000 and $5,000. Defendant offered to split the money with Robinson if Robinson would help him by driving a car. Robinson agreed to the scheme.

According to Robinson, the men were obliged to abandon their first attempt on James Worley's life, but two nights later, equipped with a .22-caliber rifle, a piece of pipe and a container of gasoline, they returned in defendant's car to Worley's house and parked on the dirt road. As the men approached Worley's house on foot, Robinson carried the rifle and defendant carried the pipe. They entered the house by the back door, went into a hallway and saw James Worley asleep in a bedroom. Defendant took the rifle from Robinson and in the presence of Worley's wife, Denise, shot Worley twice in the left chest from a distance of between two and three feet, killing him.

With Denise Worley's help, defendant and Robinson dressed Worley's corpse and placed it on the passenger seat of Worley's Volkswagen. With Robinson following in the Volkswagen, defendant drove away from the house in his own car. Eventually, both cars stopped on the side of the road. Robinson then poured the container of gasoline into the Volkswagen and onto Worley, and ignited it. At approximately 2:00 a.m. on 26 March 1984 the still burning Volkswagen was discovered. Although Worley's body was badly burned all over, it showed greater charring on the left side. Dr. Deborah L. Radische, a pathologist from the Office of the Chief Medical Examiner, testified that James Worley died from the gunshot wounds to his chest.

According to Robinson, after James Worley's death, defendant and Robinson were in contact, but the latter received no money for his part in the killing. The two men discussed the situation and the fact that, according to defendant, Denise Worley had been talking to the police. By Robinson's account, defendant was afraid that, because Denise Worley was a witness to the killing, she could put both men in the penitentiary.

On the afternoon of 29 April 1984, defendant and Robinson decided to kill Denise Worley that night. The men spent the

afternoon at defendant's trailer, smoking marijuana and drinking a little wine. Denise Worley visited the trailer, had a discussion with defendant and left. She returned that night, with her two children, four-year-old Psoma Wine Baggett and an infant. When Denise Worley arrived, Robinson was in the back bedroom, but he moved to the bathroom on defendant's instructions, where he picked up the iron pipe which defendant had instructed him to use in the killing. After defendant had turned off the lights and was holding Denise Worley in a romantic pose, Robinson crept out of the bathroom and twice hit her over the head with the pipe. According to Robinson, Denise Worley fell backwards into the hallway, whereupon defendant straddled her, grabbed her by the throat and dragged her to the bathroom. Defendant placed Denise Worley into the half-filled bathtub and held her head under water until she stopped struggling. The men then cleaned up the blood from the bathroom and hallway floors, removed Worley's body from the bathtub and placed it in the trunk of her car. They returned to the house to get the two children who were asleep and put them into Worley's car.

With Robinson driving Denise Worley's car and defendant driving his own, the two men drove to a field not far from a bridge at a place called White's Creek. As they opened the trunk of Worley's car, the four-year-old, Psoma Wine Baggett, awoke and got out of the car. Defendant told Robinson that they would have to get rid of the child because she could testify against them. When Psoma walked to the back of the car asking for her mother, defendant struck her twice with the iron pipe. Defendant then removed Denise Worley from the trunk of the car and put her in the passenger side. Psoma was put on the floor on the passenger side. As the child lay there, defendant gave the pipe to Robinson and told him to hit her. Robinson did so. Defendant drove his own car and Robinson drove Worley's car to the bridge. Robinson got out of Worley's car and let it roll down the embankment into the creek. Defendant then pulled Denise Worley halfway out of the car so that her head and torso were in the water. He threw Psoma several feet from the car into the water. As the men left the creek, Robinson could hear a crying sound. The infant was left in the car physically unharmed.

Dr. John Butts, forensic pathologist and then-Associate Chief Medical Examiner for North Carolina, who performed the autopsy on Denise Worley, testified that in his opinion, Denise Worley had died as a result of drowning as well as trauma to the head, but that she was still alive when she entered the water. Dr. Deborah L. Radische testified that in her opinion, Psoma Wine Baggett died from the trauma to her head as well as drowning and, like her mother, she was still alive when she entered the water.

. . . .

The jury found defendant guilty of first-degree murder in all three cases. At the sentencing phase of the trial, defendant stipulated that he had previously been convicted of involuntary manslaughter and that the act involved the use of violence. Defendant then put on further evidence of his good character and reputation in the community, as well as his reputation for honesty. The State presented rebuttal evidence of defendant's bad reputation.

*State v. McLaughlin*, 323 N.C. 68, 77-79, 109, 372 S.E.2d 49, 57-58, 59 (1988).

We are here concerned only with the two mitigating circumstances that the jury failed to find, i.e., that defendant's capacity to appreciate the criminality of his acts or to conform his conduct to the requirements of law was impaired, and that defendant had been a person of good character and reputation in the community. Unlike the majority, I conclude that, upon the evidence presented, no reasonable juror would have found either of these circumstances to exist.

The evidence to support these two circumstances was, to say the least, sparse.

While defendant had already received the benefit of his low IQ in another mitigating circumstance found by the jury, that same evidence might, under proper circumstances, contribute to a finding that defendant's capacity to appreciate the criminality of his acts or to conform his conduct to the requirements of the law was impaired. Here, however, defendant's low IQ was never linked by any testimony to any impairment of his ability to appreciate the criminality of his acts or to conform his conduct to the law. The only other evidence that would have supported the circumstance

was the evidence of defendant's drinking and use of drugs. Despite defendant's testimony concerning his ingestion of marijuana, wine, beer, and two "hits" of acid on the day that Mr. Worley was murdered, neither McLaughlin nor any other witness testified that he was drunk, high, or impaired in any way. Further, the evidence belies any such notion. Defendant drove his vehicle all over the county without any problem, washed his car, fixed a meal, went to various hangouts and talked to people, including his codefendant, Eddie Robinson, with no problem whatever. He testified to performing a series of activities that would have been virtually impossible if he had been high on alcohol or drugs. At no time during the trial did defendant claim that the killing was in any way influenced by his alleged use of drugs. Because of the failure to link his ingestion of drugs and alcohol to any impairment, I question whether the circumstance should have been submitted at all. The Worley murder was preplanned and was carried out with great precision. Defendant and his accomplice, Robinson, had even made a trial run the night before the killing took place. I conclude that no reasonable juror would have found, upon the evidence presented, that defendant was unable to appreciate the criminality of his acts or to conform his conduct to the law.

With regard to the second mitigating circumstance that the jury failed to find, i.e., that defendant had a good character and reputation in the community, no *reasonable* juror could have found this circumstance to exist. Defendant in this case is a triple murderer. By defendant's own admission, he was previously convicted of a felony involving violence to the person. He agreed to and did kill one person for the pecuniary gain of $3,000 to $5,000 and executed Mrs. Worley and an innocent child to conceal his crime. It was only by the grace of God that Mrs. Worley's second child escaped death. His violent, criminal exploits in the instant case almost defy belief. Not sobered by the gruesomeness of his initial contract killing, wherein he first shot and killed Mr. Worley and later poured gas on and burned his body, defendant calculated a heinous plan to prevent law enforcement authorities from discovering his initial murder. Beguiling Mrs. Worley with romance, defendant allowed his coconspirator to bludgeon Mrs. Worley with a lead pipe. Defendant then dragged his victim by the throat to the bathtub, where he held her under water until she stopped struggling. Defendant, in order to avoid apprehension by the police, then determined that Mrs. Worley's defenseless four-year-old child needed to be executed.

TOMLINSON v. CAMEL CITY MOTORS

[330 N.C. 76 (1991)]

Thereafter, while the child was innocently inquiring after its mother, defendant struck the child two times with the same lead pipe. Gruesomely, the bodies were laid side-by-side in the backseat of the car accomplice Robinson was driving. Still undeterred, and apparently hoping to make their horrible crimes appear as accidents, defendant and his accomplice sent the car containing the near-lifeless bodies careening down an embankment into the creek. When the car stopped partially in the water, defendant arranged Mrs. Worley's body in such a way that her head and torso were in the water. Defendant then threw the child, still alive, into the creek, where she drowned. The bodies were then left in the creek water to be discovered by authorities. It stretches credulity to believe that any *reasonable* juror would have found defendant to be a person of good character and reputation. Even if found to exist, no *reasonable* juror would ascribe to it any mitigating value under the facts of this case.

The aggravating circumstances relied upon for the imposition of the death penalty were amply supported by the evidence, the sentence was not imposed under the influence of any passion or prejudice or any other arbitrary factor, and it is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2) (1988). I vote to affirm the sentence of death.

Justices MITCHELL and WHICHARD join in this dissenting opinion.