STATE OF NORTH CAROLINA v. JOSHUA WAYNE GIBSON

No. 563A94

(Filed 3 November 1995)

1. **Evidence and Witnesses § 1331 (NCI4th)— confession by juvenile—Miranda and statutory warnings—sufficiency of findings**

    The trial court did not err in the denial of a juvenile defendant's motion to suppress an inculpatory statement he made to police officers where the trial court found from uncontroverted evidence that defendant was fully advised of his *Miranda* rights and his rights under N.C.G.S. § 7A-595(a), and the court also found that defendant "freely, knowingly, intelligently and voluntarily" waived his rights and that his statement was made "freely, voluntarily and understandingly." The trial court's findings were not insufficient to support the ruling admitting defendant's confession into evidence because they did not include the precise words of N.C.G.S. § 7A-595(d) that defendant "knowingly, willingly, and understandingly" waived his rights.

    **Am Jur 2d, Evidence §§ 719, 749; Juvenile Courts and Delinquent and Dependent Children § 95.**

    **Voluntariness and admissibility of minor's confession. 87 ALR2d 624.**

STATE v. GIBSON

[342 N.C. 142 (1995)]

2. **Evidence and Witnesses §§ 1246, 1261 (NCI4th)— presence of parents and attorney in police station—failure to advise juvenile—admissibility of juvenile's confession**

Law enforcement officials are not required to inform a juvenile that his parents or attorney are actually present in the police station before taking his voluntary confession, and their failure to do so does not render the juvenile's confession involuntary as a matter of law or otherwise inadmissible.

**Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children § 95.**

**Voluntariness and admissibility of minor's confession. 87 ALR2d 624.**

3. **Evidence and Witnesses § 1320 (NCI4th)— confession of juvenile—voir dire hearing—officer's training—exclusion of testimony—no error**

A juvenile's confession was not improperly admitted because the trial court sustained the State's objections to defendant's questions concerning an officer's training in taking statements from juveniles in criminal cases where such officer never conducted any interview or questioning of defendant, and his training was thus not a proper matter for consideration in determining whether defendant's confession was admissible.

**Am Jur 2d, Evidence § 307.**

4. **Criminal Law § 107 (NCI4th)— criminal histories of State's witnesses—no right to discovery**

Defendant was not entitled under N.C.G.S. § 15A-903(d) to be provided the criminal histories of the State's civilian witnesses.

**Am Jur 2d, Depositions and Discovery § 253.**

5. **Criminal Law § 106.2 (NCI4th)— discovery—communications between victim and girlfriend—irrelevancy**

Defendant was not prejudiced by the trial court's refusal to compel the State to permit him to inspect written communications between a murder victim and his girlfriend, who was a State's witness, since nothing in them was relevant to the issues raised at trial.

**Am Jur 2d, Depositions and Discovery §§ 253, 254.**

**6. Homicide § 255 (NCI4th)— first-degree murder—premeditation and deliberation—sufficiency of evidence**

The evidence was sufficient to support submission of an issue as to defendant's guilt of premeditated and deliberate first-degree murder where it tended to show that defendant was present while defendant's friend and the victim exchanged words; defendant leaned out of his friend's truck and shot the victim as the victim moved toward his own truck; defendant then shot the victim several times while chasing him through the woods and shot him in the head a number of times at close range while he was helpless on the ground; and the victim was discovered face-down on the ground with his arms folded up under his face and upper body.

**Am Jur 2d, Homicide § 425.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Saunders, J., at the 14 April 1994 Criminal Session of Superior Court, Mecklenburg County. Heard in the Supreme Court on 13 September 1995.

*Michael F. Easley, Attorney General, by Jill Ledford Cheek, Assistant Attorney General, for the State.*

*Charles L. Morgan, Jr., for defendant-appellant.*

MITCHELL, Chief Justice.

Defendant was indicted for the first-degree murder of William Travis Runyan. He was tried non-capitally, found guilty as charged, and sentenced to a mandatory term of life imprisonment. Defendant appealed to this Court asserting four assignments of error.

Evidence presented by the State, including defendant's inculpatory statement made prior to his arrest, tended to show that Travis Runyan and Michael Hayes arranged a meeting for the afternoon of 10 February 1993 to settle a dispute over Travis's girlfriend, Jennifer Hall, who was Michael's former girlfriend. The original plan called for Travis and Michael to meet at J.H. Gunn Elementary School in Charlotte. Pursuant to Jennifer's suggestion that the meeting be in a more public place, it was changed to the Wal-Mart on Albemarle Road. Jennifer and Travis agreed that Travis would come to see her later that afternoon. After these arrangements were made, Jennifer became concerned that there might be trouble, went to the Wal-Mart,

and concealed herself so that she would not be visible to Travis or Michael.

Shortly after arriving at the Wal-Mart, Jennifer saw Travis and Michael arrive in their respective trucks. She was unable to see inside Michael's truck because he had tinted windows. She saw Travis get out of his truck, walk up to Michael's truck, and "put up his hands." Travis then got back in his truck. Both trucks then left the Wal-Mart parking lot, and Jennifer went home to wait for Travis.

Travis and Michael, who was accompanied by defendant, traveled out into Mecklenburg County and parked in the Camp Stewart Road area. While defendant stayed in Michael's truck, Michael and Travis had an exchange of words. Travis started walking around Michael's truck. Defendant leaned out the window and fired his gun in Travis's direction, shooting him in the stomach. As Travis ran into the woods, defendant followed and shot Travis once in the leg and several times in the head, killing him.

When Travis did not arrive at Jennifer's house at the appointed time, she called his home and spoke with his father, Tom Runyan, a detective with the Charlotte Police Department. After obtaining details, Mr. Runyan set out to find his son by searching areas where he thought someone might hide a body or car. After more than an hour, Mr. Runyan found Travis's abandoned truck in a new development near Camp Stewart Road. He called the police dispatcher for help and began searching the area for Travis. Mr. Runyan found Travis's body in the woods near where the truck had been found.

Dr. J. Michael Sullivan, forensic pathologist and medical examiner for Mecklenburg County, testified that the autopsy he performed on Travis revealed six gunshot wounds: one wound to the abdomen, one wound to the right leg, and four wounds to the head. Dr. Sullivan stated that the nature of the wounds to Travis's head indicated that the shots were fired by someone standing over the body. They were close or intermediate range wounds, meaning that the shots were fired from around two to three feet away.

Officer Steven Willis testified that he went to Michael Hayes's home on the morning of 11 February 1993 to discuss the killing with him. Michael told him that defendant was also present in the home and that the police might want to talk with him. Defendant, who was fifteen years old, accompanied Officers Willis and Leonard to the police station. The officers believed at that time that defendant was

an alibi witness. Upon defendant's arrival at the station, Officer David Graham and another officer told defendant that he was not under arrest, that any participation by him in any interview was voluntary, and that he was free to leave at any time.

The first portion of the interview with defendant lasted approximately one hour and a half, during which defendant denied any knowledge of Travis's death. After defendant took a break, Officer Graham again reminded him that he could end the interview at any time and advised him of his *Miranda* and juvenile rights. Defendant indicated that he wished to continue the interview and signed a written waiver of rights. Defendant also signed a "Juvenile Waiver of Rights." Officer Graham then told defendant that there was no doubt that Michael and defendant were involved in the murder but that the officers did not know the reason for the murder. While defendant previously had acted self-assured, at this point he became upset and his voice became "very low." Defendant then stated that he, Michael, and Travis had gone to the Camp Stewart Road area. Defendant said that he shot Travis several times after Travis and Michael had an argument and Travis started "acting crazy [like] he was going to turn on us, hurt us or kill us." Defendant said that the gun he had used, which belonged to defendant's father, was located at defendant's home. Defendant signed a voluntary consent to search form stating where the gun could be found in the home.

Graham reduced defendant's confession to writing, and defendant signed it. While Graham knew that defendant's parents and an attorney were at the police station during the period in which the interview took place, he did not inform defendant of their presence. Defendant did not ask to see anyone during the interview.

[1] Defendant assigns as error the trial court's denial of his motion to suppress the inculpatory statement he made to police officers. Defendant first contends in support of this assignment of error that, as he was a juvenile in custody when he made his inculpatory statement and the trial court failed to make proper findings under N.C.G.S. § 7A-595, it was error for the trial court to permit his statement to be introduced as evidence. N.C.G.S. § 7A-595 includes the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, *reh'g denied*, 385 U.S. 890, 17 L. Ed. 2d 121 (1966), as well as additional warnings for juveniles who are to be interrogated while in custody.

The findings of a trial court following a *voir dire* hearing on the voluntariness of a confession are conclusive and will not be disturbed

STATE v. GIBSON

[342 N.C. 142 (1995)]

on appeal if they are supported by competent evidence in the record. *State v. Holden*, 321 N.C. 125, 137, 362 S.E.2d 513, 523 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). A trial court's conclusions of law, however, are fully reviewable by our appellate courts. *State v. McCullers*, 341 N.C. 19, 25, 460 S.E.2d 163, 167 (1995).

In the present case, the trial court found from uncontroverted evidence that defendant was fully advised of his rights as required by N.C.G.S. § 7A-595(a) and that he signed a written acknowledgement and waiver of those rights before making his confession to the killing of Travis Runyan. The trial court did not rule expressly on the question of whether defendant was in custody at the time he made his inculpatory statement. We assume *arguendo* for purposes of this appeal that he was in custody.

N.C.G.S. § 7A-595(d) provides:

Before admitting any statement resulting from custodial interrogation into evidence, the judge must find that the juvenile knowingly, willingly, and understandingly waived his rights.

N.C.G.S. § 7A-595(d) (1989). The trial court found in this case that "defendant was in full understanding of his constitutional rights . . . and that he freely, knowingly, intelligently and voluntarily waived each of these rights and thereupon made the statements to the officers" and that "the statement was made . . . freely, voluntarily and understandingly." Defendant contends that, as the trial court's findings were in words not identical to those used in the statute, its findings are insufficient to support the ruling admitting defendant's inculpatory statement into evidence. We do not agree.

In *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991), this Court noted that the "purpose of the requirement" of N.C.G.S. § 7A-595(d) "is to establish the basis for admitting the statement." *Id.* at 187, 400 S.E.2d at 419. This Court has found no error where the orders of trial courts holding confessions of juveniles to be admissible have been consistent with the purpose of the statute, but have not included the precise statutory words that the defendants "knowingly, willingly, and understandingly" waived their rights. *See, e.g., State v. Barber*, 335 N.C. 120, 129, 436 S.E.2d 106, 111 (1993) (trial court findings that juvenile defendant "voluntarily waived [her juvenile and *Miranda*] rights, and that the statement she gave thereafter to the officers was freely, voluntarily and understandingly given"), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 865 (1994). In *State v. Reid*, 335 N.C. 647, 440 S.E.2d 776

(1994), the trial court used the same terminology used in the instant case—that the juvenile defendant *"freely, knowingly, intelligently and voluntarily waived* each of these [statutory] rights, and thereafter made the statements in question"—in its finding that the waiver comported with N.C.G.S. § 7A-595(d). *Id.* at 664, 440 S.E.2d at 786 (emphasis added). We upheld the trial court's order in *Reid*, concluding that "those facts support the conclusions of law that defendant voluntarily waived his juvenile and *Miranda* rights and that the statement that he gave thereafter was freely, voluntarily, and understandingly given." *Id.* at 665, 440 S.E.2d at 786. As we find *Reid* to be controlling here, we conclude that the trial court's findings are sufficient to comply with the requirements of the statute.

[2] Defendant also argues in support of this assignment of error that the officers' failure to inform him that his parents and attorney were present in the police station at the time he gave his incriminating statement renders his waiver of rights involuntary as a matter of law. We do not agree.

It was uncontroverted at trial that prior to defendant's confession, Officer Graham advised him of his *Miranda* rights and his rights as a juvenile under N.C.G.S. § 7A-595(a). While defendant argues that his waiver was involuntary because he was not notified that his parents and attorney were at the station during the time of the interview, notifying defendant of such facts does not come within the aegis of N.C.G.S. § 7A-595(a). That statute only provides that a juvenile in custody must be advised prior to questioning:

(1) That he has a right to remain silent; and

(2) That any statement he does make can be and may be used against him; and

(3) That he has a right to have a parent, guardian or custodian present during questioning; and

(4) That he has a right to consult with an attorney and that one will be appointed for him if he is not represented and wants representation.

N.C.G.S. § 7A-595(a); *cf. Moran v. Burbine*, 475 U.S. 412, 422-23, 89 L. Ed. 2d 410, 421-22 (1986) (holding that the Sixth Amendment right to counsel barring any interference with defense counsel's efforts to act as a medium between the State and a defendant attaches only when a defendant has been formally charged); *State v. Reese*, 319 N.C. 110,

129-32, 353 S.E.2d 352, 363-64 (1987) (holding that events occurring outside the defendant's presence, including the arrival of defense counsel at the scene of the interrogation, have no bearing on defendant's capacity to understand and validly waive a constitutional right); *State v. Smith*, 294 N.C. 365, 374-76, 241 S.E.2d 674, 679-81 (1978) (noting that "the crucial question is whether the statement was freely and understandingly made after [defendant] had been fully advised of his constitutional rights and had specifically waived his right to remain silent and to have counsel present"). Law enforcement officials are not required to inform a juvenile that his parents or attorney are actually present before taking his voluntary confession, and their failure to do so does not render the juvenile's confession involuntary as a matter of law or otherwise inadmissible.

[3] Defendant also argues in support of this assignment of error that the trial court erred in sustaining the State's objections to questions asked of Officer Leonard and, as a result, contends that the court's denial of defendant's motion to suppress his confession was reversible error. The trial court sustained the State's objections to defendant's questions concerning Officer Leonard's training in taking statements from juveniles in criminal cases. As Leonard never conducted any interview or questioning of defendant, his training was not a proper matter for consideration in determining whether defendant's confession was admissible. For the foregoing reasons, this assignment of error is overruled.

[4] Defendant next assigns as error the trial court's denial of his motion that he be provided criminal histories of the State's civilian witnesses. Defendant asserts that he needed such information to prepare for cross-examination and that he was entitled to the information pursuant to N.C.G.S. § 15A-903(d) dealing with the discovery of documents. This statute states in relevant part:

> Upon motion of the defendant, the court must order the prosecutor to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, . . . or copies or portions thereof which are within the possession, custody, or control of the State and which are material to the preparation of his defense.

N.C.G.S. § 15A-903(d) (1988). We held in *State v. McLaughlin* that no statutory or constitutional principle requires a trial court to order the State to make a general disclosure of criminal records of the State's witnesses. *McLaughlin*, 323 N.C. 68, 85, 372 S.E.2d 49, 61 (1988), *sen-*

*tence vacated on other grounds,* 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand,* 330 N.C. 66, 408 S.E.2d 732 (1991). We continue to adhere to our ruling in *McLaughlin* and conclude that this assignment of error is without merit.

**[5]** Defendant next requests that this Court review the substance of written communications between Jennifer Hall and Travis Runyan for any relevant material that was withheld from defendant at trial. The trial court denied defendant's motion to examine those communications and ordered them sealed and forwarded to this Court for purposes of appellate review. Defendant argues that the trial court committed reversible error by refusing to compel the State to produce those communications. We have reviewed the materials at issue in their entirety. Nothing in them is in any manner relevant to the issues raised at trial, and defendant was not prejudiced by the trial court's refusal to compel the State to permit him to inspect them.

**[6]** By another assignment of error, defendant argues that the trial court erred in denying his motion to dismiss the charge of first-degree murder. Defendant contends that all of the evidence tended to show that he shot the victim in the "heat of passion" and did not premeditate and deliberate.

When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt,* 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *Id.* Where, as here, a motion to dismiss calls into question the sufficiency of the evidence, the issue for the trial court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *Id.*

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Skipper,* 337 N.C. 1, 26, 446 S.E.2d 252, 265 (1994), *cert. denied,* ― U.S. ―, 130 L. Ed. 2d 895 (1995); *State v. Fleming,* 296 N.C. 559, 562, 251 S.E.2d 430, 432 (1979). " 'Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation.' " *Skipper,* 337 N.C. at 27, 446 S.E.2d at 265-66 (quot-

ing *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994)). " 'Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.' " *Id.* at 27, 252 S.E.2d at 266 (quoting *Conner*, 335 N.C. at 635, 440 S.E.2d at 836). Circumstances to be considered in determining whether a killing was premeditated and deliberate include: (1) a lack of provocation by the victim, (2) conduct and statements of the defendant before and after the killing, (3) threats and declarations made against the victim by defendant, (4) ill will or previous difficulty between the parties, (5) the dealing of lethal blows after the victim has been felled or rendered helpless, (6) evidence that the killing was accomplished in a brutal manner, and (7) the nature and number of the victim's wounds. *State v. Thomas*, 332 N.C. 544, 556, 423 S.E.2d 75, 82 (1992).

In the present case, the evidence tended to show that defendant was present while Michael Hayes and the victim exchanged words. Defendant shot the victim as the victim moved toward his (victim's) truck. Defendant then shot the victim several times while chasing him through the woods and shot him in the head a number of times at close range while he was helpless on the ground. The victim was discovered face-down on the ground with his arms folded up under his face and upper body. Considering the evidence in the light most favorable to the State, we conclude that the evidence was sufficient to warrant an instruction on premeditated and deliberate first-degree murder. This assignment of error is overruled.

Defendant received a fair trial free from prejudicial error.

NO ERROR.