IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-927

Filed 18 June 2025

Rowan County, Nos. 20 CRS 054385-790, 22 CRS 000929-790, & 24 CRS 000246-790

STATE OF NORTH CAROLINA,

v.

BRIAN BRANHAM, Defendant.

Appeal by Defendant from judgments entered 23 February 2024 and 22 April 2024 by Judge Michael S. Adkins in Rowan County Superior Court. Heard in the Court of Appeals 20 March 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Ronnie K. Clark, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender John F. Carella, for Defendant–Appellant.*

MURRY, Judge.

Brian Branham (Defendant) appeals the trial court's denial of his motion to dismiss for immunity under N.C.G.S. § 90-96.2(c) and its acceptance of his guilty plea. For the following reasons, this Court holds that the trial court did not prejudicially err on either count

## I.    Background

On 30 November 2020, following a 911 call, the Rowan County Sheriff's Office was dispatched to assist Defendant, who was unconscious behind the wheel of a running vehicle. The 911 caller knocked on Defendant's window but could not get a response. The 911 caller left the scene before responding officers arrived.

Alcohol Law Enforcement Agent Jerry Dean arrived on the scene and observed Defendant asleep in the car. He knocked on Defendant's car window to wake him up. As Defendant exited the vehicle, Agent Dean observed a needle and plastic baggie filled with heroin on the driver's seat. Arriving after Agent Dean, Lieutenant Brian Barkley observed Defendant standing outside of his car. Lieutenant Barkley also saw the same paraphernalia and drugs in plain view, giving him probable cause to search the vehicle. After paramedics arrived, Lieutenant Barkley asked Defendant if he had any medical problems or needed medical assistance. Defendant responded, "No."

On 19 April 2021, a grand jury indicted Defendant for felony possession of a Schedule I controlled substance and related drug paraphernalia. On 23 May 2023, Defendant moved to dismiss the prosecution through a "motion to determine immunity," arguing that N.C.G.S. § 90-96.2 (the Good Samaritan Law[1]) granted him immunity from prosecution in these circumstances (Motion). On 19 February 2024, the trial court heard Defendant's Motion. At the hearing, Defendant testified to intravenously injecting fentanyl and losing consciousness. Although no witness

---

[1] *Luke* 10:25–37 (parable of the Good Samaritan).

testified to administering Defendant medical treatment, he believed that he received Narcan because he "came back and vomited." Defendant testified to "refus[ing] to go to the hospital." The State offered evidence through Lieutenant Barkley and Agent Dean's testimonies regarding Defendant's refusal to receive medical care and appearance inconsistent with a drug overdose. Both Agent Dean and Lieutenant Barkley testified that they did not observe Defendant receiving any medical care for a drug-related overdose. Further, Lieutenant Barkley stated that he did not observe any evidence of treatment, such as "medical devices, medicine, or waste from treatment." On 23 February 2024, the trial court denied Defendant's Motion for "fail[ing] to satisfy the statutory requirements to qualify for immunity from prosecution under [N.C.]G.S. § 90-96.2."

On 22 April 2024, Defendant pled guilty to felony possession of a Schedule I controlled substance, possession of drug paraphernalia, failure to appear, and obtaining habitual felon status. Defendant's plea arrangement purported to "preserve[ ] the issue of denial of Defendant's motion for appeal," as well as his "inten[t] to appeal the final judgment of conviction in 20CRS54385 and 22CRS929 pursuant to N.C.[G.S. §] 15A-979." At Defendant's plea hearing, the trial court's plea colloquy included the following:

> THE COURT: Do you understand that following a plea of guilty there are limitations on your right to appeal?
> DEFENDANT: Yes, sir.
> THE COURT: The prosecutor, your lawyer and you inform the Court

that the following are all the terms and conditions of your plea: That you preserve the right—or the issue of the denial of your pretrial motion for appeal and that you intend to appeal the final judgment of conviction in 20CRS54385 and 22CRS929 pursuant to General Statutes 15A-979?
DEFENDANT: Yes, sir.

(Citation modified.) After the trial court accepted Defendant's plea, Defendant gave oral notice of appeal, at which point the trial court "note[d] his appeal in this case pursuant to his transcript with respect to appealing the issue of [the trial court's] ruling on his pretrial motion."

## II. Procedural Jurisdiction

Defendant petitions this Court for a writ of certiorari at the outset of his appeal. *See* N.C. R. App. P. 21(a)(1). As a threshold matter, Defendant must show a statutory right to appeal from his guilty plea. *State v. Pimenthal*, 153 N.C. App. 69, 72 (2002) ("[A] defendant's right to appeal in a criminal proceeding is purely a creation of state statute."). A defendant generally waives his right to appeal a conviction per se if he pleads guilty. *See* N.C.G.S. § 15A-1444(a1) (2023). Absent an additional statutory right to appeal, he may appeal a trial court's improper acceptance of a guilty plea "only upon a grant of a writ of certiorari." *State v. Demaio*, 216 N.C. App. 558, 562 (quoting *State v. Bolinger*, 320 N.C. 596, 601 (1987)). As the *Demaio* Court explained, we may grant that discretionary writ in this context only if "permitted under Rule 21 or *Bolinger*." *Id.* at 565. Thus, Defendant's appeal would be "subject to dismissal" in ordinary situations. *State v. Rogers*, 256 N.C. App. 328, 331

- 4 -

(2017) (citing *Demaio,* 216 N.C. App. at 561). However, N.C.G.S. § 90-96.2 creates a statutory right to appeal.

## A. *Demaio* and *Osborne*

On appeal, Defendant argues that the trial court erred (1) by accepting his guilty plea as "the product of [an] [un]informed choice" that "explicitly invoked a right to appeal that did not exist" by "preserving his right to appeal an unappealable immunity motion" and (2) by "misinterpret[ing] the meaning of 'overdose'" under N.C.G.S. § 90-96.2 in finding that Defendant was not subject to immunity under the Good Samaritan Law. The State asks this Court to affirm the trial court's ruling on Defendant's Motion but vacate and remand the trial court's judgment regarding Defendant's guilty plea, conceding his lack of "right to appeal the denial of his Motion. We review *de novo* both of these "[q]uestions of statutory interpretation a[s] ultimately questions of law." *In re EY, LLP*, 363 N.C. 612, 616 (2009). Because Defendant raises the threshold question of whether we may consider this issue at all, we must first address whether Defendant properly categorizes his Motion as "unappealable."

Defendant mistakenly (if understandably) points to *State v. Demaio* for the argument that the trial court's improper acceptance of his guilty plea denied him "the benefit of his bargain" with the State. *Demaio*, 216 N.C. App. at 562. In *Demaio*, the State charged the defendant with fraud and drug trafficking after he forged an oxycodone prescription. *Id.* at 560. Mid-trial, the defendant entered a guilty plea in

exchange for a lesser charge and reduced sentence. *Id.* at 561. The plea agreement purported to "preserve[ ] [his] right to appeal the denial[s]" of two earlier pre-trial motions. *Id.* When the defendant petitioned for a writ of certiorari on appeal, this Court reversed and remanded the trial court's judgment for rehearing. *Id.* at 565. It reasoned that "the plea agreement violated the law" because it could not discern a right to appeal from either the statute, Rule 21, or *Bolinger*'s reasoning. Much like Defendant here, the *Demaio* Court asserted that the plea agreement "was not the product of informed choice and did not provide him the benefit of his bargain." *Id.* at 562. Thus, *Demaio* stands for the proposition that a North Carolina defendant may only appeal to the Appellate Division under three authorities: (1) statutory right, (2) Rule 21, or (3) *Bolinger*'s procedural challenge to a faulty guilty plea. *See Bolinger*, 320 N.C. at 601 (restricting guilty-plea defendant's appealable issues to lone procedural challenge and five situations specified in N.C.G.S. § 15A-1444(e)).

But Defendant's misinterpretation of *Demaio* risks abrogation of *State v. Osborne*, 275 N.C. App. 323 (2020), where this Court distinguished § 90-96.2's grant of prosecutorial immunity from our common law's recognition of jurisdictional immunity.[2] In *Osborne*, the defendant overdosed on heroin in a hotel bathroom. *Id.*

---

[2] North Carolina has (near-)universally recognized this crucial distinction between statutory and inherent prosecutorial protections. *Compare* N.C.G.S. § 90-96.2(a), (c3) (granting "limited immunity from prosecution" to someone who renders medical aid for a drug overdose), *with Steelman v. City of New Bern*, 279 N.C. 589, 592 (1979), (documenting North Carolina's post-statehood recognition at common law of "governmental immunity"). *But see, e.g., Lambert v. Town of Sylva*, 259

at 325. After her case proceeded through the Appellate Division on unrelated issues, this Court considered on remand a question raised *sua sponte* at the Supreme Court[3]: whether § 90-96.2 creates an additional "jurisdictional requirement" raisable on appeal or merely "grant[s] traditional immunity from prosecution" that she must preserve at trial. *Id.* at 328. This Court addressed preservation of the Good Samaritan Law's immunity in lieu of its applicability, reasoning that it could not reach the latter question because the defendant "never raised the issue . . . in the trial court." *Id.* at 326. The *Osborne* Court confirmed that statutory "immunities generally are waived if not asserted" prior to appeal—a proposition we do not challenge here. *Id.* at 327.

## B. Avoiding Absurdity

But we must now read *Demaio*'s binding construction of § 15A-1444 *in para materia* with *Osborne*'s § 90-96.2. Otherwise, any defendant could negate a negotiated plea agreement on appeal merely by inserting an unreachable "statutory immunity argument" into it. *Osborne*, 275 N.C. App. at 327; *see* 27 N.C. Index 4th *Statutes* § 33 ("Statutes dealing with the same subject matter must be . . . harmonized, if possible, to give effect to each."). When construed *de novo, see EY*, 363 N.C. at 616, the interrelated text of these two provisions do not allow for such an

---

N.C. App. 294, 301 (2018) (characterizing "[g]overnmental immunity [a]s an affirmative defense" that "must be plead by the defendant" "like other forms of immunity").

[3] *See generally State v. Osborne*, 372 N.C. 619, 632–34 (2019) (Earls, J., concurring) (suggesting that this Court determine whether § 90-96.2's "immunity is waived if not affirmatively asserted, or whether, like subject[-]matter jurisdiction, it can be raised at any time.")

"absurd result[ ]," *State v. Rankin*, 371 N.C. 885, 890 (2018) (quotation omitted). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (applying absurdity doctrine when "*no* sense of a provision . . . can eliminate an absurdity unless the court fixes a textual error") [hereinafter Scalia & Garner, *Reading Law*].

As specified in § 15A-1444(e), North Carolina's Criminal Procedure Act generally limits a guilty-plea defendant's statutory right of appeal to five distinct categories unmet here. *See Demaio*, 216 N.C. App. at 561–62 (quoting N.C.G.S. §§ 15A-979(b), -1444(e)). Under § 90-96.2, however, the State grants "limited immunity from prosecution" to those who administer medical aid to someone actively suffering from a drug overdose. N.C.G.S. § 90-96.2(c3). A would-be defendant may raise this—or another—traditional immunity claim before trial to "protect[ ] against being charged or haled into court at all." *Osborne*, 275 N.C. App. at 327. And in a civil case, that defendant would ordinarily waive his right to appeal his interlocutory immunity claim if he proceeded to trial on the merits anyway. *See Plantation Bldg. of Wilmington, Inc. v. Town of Leland*, 379 N.C. 55, 56–57 (2022). But the Criminal Procedure Act affords *criminal* defendants no "provision for appeal . . . as a matter of right from an interlocutory order . . . [until] after a final judgment has been entered in the superior court." *State v. Henry*, 318 N.C. 408, 409 (1986) (per curiam) (citations omitted). *But see Hedrick v. Rains*, 121 N.C. App. 466, 468 (holding "immediately reviewable as affecting a substantial right" only those "motions grounded on the

defense of *governmental* immunity" (emphasis added)), *aff'd per curiam*, 344 N.C. 729 (1996). Thus, Defendant could not have appealed his "motion to determine immunity" until his case concluded—here, in the form of a negotiated plea bargain.

In the case *sub judice*, Defendant asserts that the plea agreement denies him "the benefit of his bargain" because his negotiated condition "explicitly invoked a right to appeal that did not exist." But the Good Samaritan Law purports to grant him statutory protection against criminal prosecution of which a trial on the merits would deprive him. *See* N.C.G.S. § 15A-954(a)(9) (requiring dismissal of charges for any defendant "granted immunity by law from prosecution"). That leaves Defendant with only the three petition options described above. As an appellate rule of universal applicability, Rule 21 merely "recognizes a procedure that litigants must use to petition for a writ of certiorari" and thus does not affect our jurisdiction. *In R.A.F.*, 384 N.C. 505, 508 (2023). *Demaio* allows for such a petition only to "procedural[ly] challenge" the guilty plea itself for its purported failure to "provide him the benefit of his bargain." *Demaio*, 216 N.C. App. at 562.

But his latter scenario would allow a clever defendant to deride his plea agreement on appeal as "the product of an [un]informed choice" based on an immunity claim unreachable by the agreement's own text. At best, our refusal to entertain Defendant's preserved traditional-immunity claim on these grounds would abrogate his statutory right to avoid the criminal process in the first place—a power this Court lacks entirely. *See Osborne*, 275 N.C. App. at 327–28 (describing General

Assembly's authority to "distin[guish] legal concepts"). Because "intelligent drafters do not contradict themselves," we see "no justification for needlessly rendering" the General Assembly's language in §§ 90-96.2 and 15A-1444(e) "in conflict if they can be interpreted harmoniously." Scalia & Garner, *Reading Law* at 180. Thus, this Court holds that N.C.G.S. § 90-96.2 grants Defendant a meritorious basis to appeal a denial of his preserved "statutory immunity" claim that his negotiated-for plea agreement would otherwise abrogate. *Osborne*, 275 N.C. App. 327. Additionally, we hold the advancement of judicial economy, lack of case law analyzing N.C.G.S. § 90-96.2, and public interest in the opioid epidemic as extraordinary circumstances warranting certiorari review. *Cryan v. Nat'l Council of YMCAs of U.S.*, 384 N.C. 569 (2023). Therefore, due to this meritorious claim and the extraordinary circumstances that justify it, we grant certiorari.

### III.    Substantive Analysis

Because Defendant made an "informed choice" to enter into the plea agreement that also "provide[s] him the benefit of his bargain" for the reasons above, this Court holds that the trial court did not err by accepting his guilty plea. *Demaio*, 216 N.C. at 562. Additionally, this Court holds that the trial court did not erroneously interpret the Good Samaritan Law for the reasons below.

### A. Informed Choice

First, Defendant asserts that the trial court erred in approving his plea agreement. At the outset, a trial court must dismiss certain charges against a

defendant who "has been granted immunity by law from prosecution," N.C.G.S. § 15A-954, because "[i]mmunities are not mere bars to conviction or judgment; they are protections against being charged or haled into court at all." *Osborne*, 275 N.C. App. at 327. The Good Samaritan Law protects an overdose victim from prosecution for certain drug crimes if the evidence of those crimes was obtained through his timely request for and receipt of medical assistance. N.C.G.S. § 90-96(a)–(b). The exemptions include a "felony violation . . . for possession of less than one gram of any controlled substance." *Id.* § 90-96.2(c).

Here, Defendant pled guilty according to the plea agreement on the express condition that he could "preserve[ ] the issue of [the] denial of [his] pretrial" "motion to determine immunity" under N.C.G.S. § 15A-979. Although this statute applies only to suppression motions, *see id.* § 15A-979(b), the trial court advised Defendant—who indicated his understanding—that pleading guilty would expressly limit his right to appeal to only those conditions specified in the agreement's text. Insofar as § 90-96.2 allows Defendant to appeal his immunity claim as a matter of right, he has the "means to take advantage of the plea arrangement to which he agreed." *State v. Ross*, 369 N.C. 393, 399 (citing *Demaio*, 216 N.C. App. at 399). Thus, this Court holds that the trial court did not err in approving Defendant's plea agreement.

## B. Meaning of "Overdose"

Second, Defendant asserts that the trial court erroneously interpreted the Good Samaritan Law in finding that he was not entitled to its immunity. As stated,

we review the denial of a defendant's motion to dismiss *de novo*. *Smith*, 186 N.C. App. 57, 62 (2007). Because a motion to determine immunity is functionally a motion to dismiss, "the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." *State v. Gibson*, 342 N.C. 142, 150 (1995).

To sustain a motion for immunity dismissal as a drug-overdose victim under N.C.G.S. § 90-96.2(b), a would-be defendant must demonstrate that he first:

(1) Sought medical assistance for a drug-related overdose by contacting the 911 system, a law enforcement officer, or emergency medical services personnel;

(2) Acted in good faith when seeking medical assistance, upon a reasonable belief that he was the first to call for assistance;

. . . .

(4) Did not seek the medical assistance during the course of a lawful search; and that

(5) The evidence for prosecution of the subsection (c3) [offenses] was obtained as a result of the person seeking medical assistance for the drug-related overdose.

N.C.G.S. § 90-96.2(b)(1)–(3), (4) (citation modified). The General Assembly defines a "drug-related overdose" as "an acute condition, including mania, hysteria, extreme physical illness, coma, or death resulting from the consumption or use of a controlled substance and that a lay person would reasonably believe to be a drug related overdose that requires medical assistance." *Id.* § 90-96.2(a). It further defines an "acute illness" as "a condition . . . serious enough to require medical care or treatment to avoid a reasonable possibility of death or permanent harm." *Id.* § 58-67-88(a).

Defendant argues that the trial court erred by requiring him to show one of the listed conditions in subsection (a) rather than applying a reasonable-person standard. At the motion hearing, Defendant testified that he "intravenously injected the fentanyl and went out" and that "[i]t's just the way it is when you overdose." He further admitted to "overdos[ing] quite a few times." Defendant's evidence shows his drug-induced unconsciousness but fails to show that the caller reasonably believe that it resulted from a drug-related overdose. Defendant testified that first responders gave him Narcan. But Agent Dean's ability to quickly awaken him by tapping on the car window indicates that Defendant's unconsciousness falls short of an "acute condition." Lieutenant Barkley testified that, based on his training and experience, individuals recovering from an overdose are usually "cyanotic, sweating, clammy," and that Defendant did not exhibit physical signs of an overdose. Viewing the evidence in the light most favorable to the State, Defendant did not experience a drug-related overdose. Thus, Defendant cannot meet the first requirement of § 90-96.2(b)(1).

As to the second requirement, both Defendant and the State failed to offer supporting evidence in either direction at the hearing. Viewing the evidence in the light most favorable to the State, we cannot conclude that the caller acted in good faith or was the first to call for assistance. Thus, Defendant cannot meet the second requirement of § 90-96.2(b)(2). Regarding the third requirement, the evidence shows that the caller contacted 911 because he observed Defendant unconscious behind the

wheel of a running car. We logically infer that this call did not occur during the execution of any warrants or lawful searches and, thus, Defendant meets the third requirement of § 90-96.2(b)(4).

Finally, Lieutenant Barkley and Agent Dean conducted a probable-cause search of Defendant's vehicle after observing drugs and drug paraphernalia in plain view, including heroin. The State further stipulated that Defendant was charged with possession of less than one gram of heroin. *See* N.C.G.S. § 90-96.2(c3). As noted above, Defendant could not show that the State seized this evidence as a result of the caller seeking medical assistance for Defendant's drug overdose. Viewing the evidence in the light most favorable to the State, the State did not obtain the evidence through any illicit statutory means. Thus, Defendant cannot satisfy the fourth and final requirement of § 90-96.2(b)(5). Because Defendant's Motion cannot meet the Good Samaritan Law's requirements on the merits, this Court holds that he is not entitled to its immunity from prosecution and that the trial court properly denied his Motion.

## IV. Conclusion

For the reasons above, this Court holds that the trial court did not err either by permitting Defendant to enter into his plea agreement or by denying his Motion to determine immunity under N.C.G.S. § 90-96.2.


NO ERROR.

Judge GORE concurs.

Judge HAMPSON concurs in part and dissents in part in a separate opinion.

HAMPSON, Judge, concurring in part, dissenting in part.

I agree with the majority in issuing certiorari to provide us with appellate jurisdiction in this matter. However, I agree with both the State and Defendant that—where Defendant's plea was not the product of informed choice—the proper outcome in this case is to vacate the Judgment and underlying plea agreement and remand this matter to the trial court, where Defendant "may withdraw his guilty plea and proceed to trial on the criminal charges. He may also withdraw his plea and attempt to negotiate another plea agreement[.]" *State v. Wall*, 348 N.C. 671, 676, 502 S.E.2d 585, 588 (1998). Accordingly, I concur in part and dissent in part.

As both parties agree, Defendant has no right to appeal based on his challenge to the trial court's denial of Defendant's Motion to Dismiss pursuant to N.C. Gen. Stat. § 90-96.2 (2023). First, no provision of N.C. Gen. Stat. § 15A-1444 provides any right of appeal from a guilty plea in this instance. Second, nothing in the text of N.C. Gen. Stat. § 90-96.2 itself provides for any right of appeal.[4] Moreover, in *Osborne*, this Court held that Section 90-96.2 does not provide any jurisdictional requirement, but rather simply grants "traditional immunity from prosecution." *State v. Osborne*, 275 N.C. App. 323, 328, 853 S.E.2d 241, 245–46 (2020). We further noted "[t]his type

---

[4] I fear the majority's judicial creation of a right to appeal—by way of certioriari—the denial of a motion to dismiss made pursuant to N.C. Gen. Stat. § 90-96.2 unsupported by any statutory text will lead to unintended consequences. First, contrary to *Osborne*, the majority seems to elevate Section 90-96.2 to jurisdictional status. Second, application of the majority's reasoning might lead one to think there could be a right to an interlocutory appeal, prior to judgment, of a denial of a motion under this statute by way of certiorari.

of immunity must be asserted as a defense by the defendant in the trial court proceeding. The failure to raise the issue waives it and precludes further review on appeal." *Id.* (citation omitted). Thus, by entering a guilty plea, Defendant has waived all such traditional non-jurisdictional defenses. *See State v. Caldwell*, 269 N.C. 521, 526, 153 S.E.2d 34, 37–38 (1967) ("An accused by pleading guilty waives all defenses other than that the indictment charges no offense.").

In addition, Defendant has made no motion before the trial court to withdraw his plea. "Thus, according to N.C.G.S. § 15A-1444 defendant is not entitled as a matter of right to appellate review of his contention that the trial court improperly accepted his guilty plea[.]" *State v. Bolinger*, 320 N.C. 596, 601, 359 S.E.2d 459, 462 (1987). Instead, "Defendant may obtain appellate review of this issue only upon grant of a writ of certiorari." *Id.*

Indeed, our Courts recognize:

if a defendant does not have an appeal of right, our statute provides for the defendant to seek appellate review by filing a petition for writ of certiorari. N.C. Gen. Stat. § 15A-1444(e) (2009). . . . If a defendant does not have an appeal as of right and we are not permitted under Rule 21 or *Bolinger* to grant certiorari on issues the defendant was promised would be preserved for appeal, then the plea agreement violates the law. In such a situation, the appellate court must place "the defendant back in the position he was in before he struck his bargain[.]" "[T]he appellate court should vacate the judgment and remand the case to the trial court where defendant 'may withdraw his guilty plea and proceed to trial on the criminal charges . . . [or] withdraw his plea and attempt to negotiate another plea agreement that does not violate [State law].'"

*State v. Demaio*, 216 N.C. App. 558, 564–65, 716 S.E.2d 863, 867–68 (2011) (first alteration added) (citations omitted).

Here, the plea agreement violates the law. As a term of the plea arrangement, Defendant was purportedly permitted to preserve his right to appeal the denial of his pretrial motion under Section 90-96.2. There is simply no right to appeal the denial of such a motion following the entry of a guilty plea. Moreover, there is no indication that in entering this plea, Defendant was made aware that his right to appeal was in question. *See, e.g.*, *State v. Tinney*, 229 N.C. App. 616, 622, 748 S.E.2d 730, 735 (2013) (declining to apply *Demaio* where "Defendant had ample notice that the provision in his plea agreement reserving his right to challenge the validity of the transfer order on appeal was, in all probability, unenforceable and elected to proceed with his guilty plea in spite of the fact that he knew that the provision in question was of questionable validity.").[5] As such, it was not the product of an informed choice. *Id.* (a guilty plea entered pursuant to a transcript of plea which purports to reserve the right to seek appellate review of a particular legal issue which is not subject to such

---

[5] The majority's concerns notwithstanding, if a defendant may be shown to have knowingly planted a poison pill term in a plea arrangement, application of *Tinney* would prevent a defendant from taking advantage of the situation precisely because the Defendant entered the plea knowingly and as the product of an informed choice. Moreover, vacating and remanding does not necessarily lead to a windfall for a defendant, as the State may simply proceed on the original charges in the indictment(s) rather than merely the lesser offenses in a plea arrangement. *See, e.g.*, *State v. Rico*, 218 N.C. App. 109, 122, 720 S.E.2d 801, 809 (Steelman, J., dissenting) (concluding judgment should be vacated, guilty plea set aside, and the case remanded for disposition of original charges where trial court erroneously imposed aggravated sentence based solely on defendant's guilty plea and stipulation as to aggravating factor), *rev'd per curiam for reasons stated in dissent*, 366 N.C. 327, 734 S.E.2d 571 (2012).

review following the entry of a guilty plea does not result in the entry of a plea which "is a product of informed choice.").

Thus, in this case, Defendant's plea arrangement violates the law. Therefore, the Judgment entered upon that arrangement cannot stand. Consequently, this Court should—as requested by both parties—vacate the judgment and remand this matter to the trial court, where Defendant may withdraw his plea and either proceed to trial on the original charges or attempt to negotiate a new plea agreement. *See Wall*, 348 N.C. at 676, 502 S.E.2d at 588.